**COMANCHE INDIAN TRIBE OF OKLAHOMA, Plaintiff,**

v.

**The Honorable Richard E. HOVIS, individually and as Judge of the District Court of Kiowa County, State of Oklahoma; the district court of Kiowa County, State of Oklahoma, Defendants,**

and

**Rhonda Wahnee, Intervenor.**

**No. CIV–92–2134–A.**

United States District Court, W.D. Oklahoma.

March 28, 1994.

---

Glenn M Feldman, O'Connor Cavanagh
Anderson Westover Killingsworth & Besh-
ears, Phoenix, AZ, Bob Rabon, Rabon Wolf
& Rabon, Hugo, OK, for Comanche Indian
Tribe of Oklahoma.

Rabindranath Ramana, Office of Atty.
Gen., Oklahoma City, OK, for Richard E.
Hovis and Kiowa County District Court.

Susan Bussey, Micheal C. Salem, Salem
Law Office, Norman, OK, for Rhonda Wah-
nee.

### ORDER

ALLEY, District Judge.

This matter is before the Court on the
Motion for Summary Judgment, pursuant to
Fed.R.Civ.P. 56, filed by plaintiff, Comanche
Indian Tribe of Oklahoma ("the Tribe").[1]
Defendants, Honorable Richard E. Hovis
("Judge Hovis") and District Court of Kiowa
County, State of Oklahoma ("the State
Court"), and intervenor, Rhonda Wahnee,
have filed a response in opposition to the
motion. The Tribe has filed a reply thereto,
and the motion is at issue.

### I.

This is a jurisdictional dispute concerning
an eleven-year old Indian child, Kristy Wah-
nee ("Kristy"), who has been subjected to
custody litigation in both the State Court and
the Comanche Tribal Children's Court ("the
Tribal Court").[2] At issue is which of the two
courts—the State Court or the Tribal
Court—has jurisdiction to adjudicate matters
relating to Kristy pursuant to the Indian
Child Welfare Act of 1978 ("ICWA"), 25
U.S.C. §§ 1901–1963, and whether jurisdic-
tion in one or the other is exclusive.

The undisputed material facts underlying
this action are that Kristy was born at the
U.S.P.H.S. Indian Hospital ("Indian Hospi-
tal") in Lawton, Oklahoma on July 19, 1982,
to Stuart Wahnee, a Comanche Indian, and
Rhonda Wahnee, a non-Indian. After
Kristy's birth, the Wahnee family lived pri-
marily on the Kiowa–Comanche–Apache
("KCA") reservation in Lawton, Oklahoma.
On April 19, 1984, Kristy's brother, Shannon
Wahnee ("Shannon"), was born at the Indian
Hospital. In July 1985, the Wahnee family
moved into low-income HUD housing in
Mountain View, Oklahoma, outside a reserva-
tion. Rhonda Wahnee filed for divorce from
Stuart Wahnee on October 15, 1985.

On January 24, 1986, Stuart and Rhonda
Wahnee executed a power of attorney grant-
ing custody and control of Kristy to her
paternal aunt, Blanche Wahnee. The power
of attorney reads as follows:

> That I, Rhonda Wahnee & Stuart Wahnee
> ... have made, constituted and appointed,
> and by these paresnts [sic] do make, con-
> stitute and appoint Blanche Wahnee ...
> my true and lawful attorney, for me, and in
> my name, place and stead, and to my use
> to act for me in regards to my child
> Khristy [sic] Wahnee ... and to consent to
> and sign any necessary documents pertain-
> ing to any and all medical needs and school
> needs and records and to keep said child in
> their custody until such a time as I am
> able to provide for and to care for said
> child myself and to act in my stead regard-
> ing said child as I myself would have the
> right to act, giving my said attorney full
> power to do everything whatsoever requi-
> site and necessary to be done in the prem-
> ises, as fully as I could do if personally
> present, with full power of substitution and
> revocation, hereby ratifying and confirm-
> ing all that my said attorney, or his substi-
> tute shall lawfully do, or cause to be done,
> by virtue hereof.

Power of Attorney at 1. Although there is
some dispute as to the precise date when
Kristy began living full-time with Blanche
Wahnee, Kristy lived with Blanche Wahnee
on January 24, 1986, the date the power of
attorney was executed, and has lived with

---

1. The Tribe is a federally recognized Indian tribe. See 53 Fed.Reg. 52829–30 (Dec. 29, 1988).

2. The Tribal Court is an Indian tribal court estab-
lished by the Tribe to conduct child custody
proceedings on tribal land.

her ever since. Kristy's brother Shannon, however, continued to live with his mother.

Blanche Wahnee, Stuart Wahnee and Kristy are enrolled members of the Tribe. Blanche Wahnee owns a home on the KCA reservation where she stays during the summer months. She regards this home as her domicile. During the school year, she is in Lawrence, Kansas, where she teaches at the Haskell Indian College. Kristy stays with her aunt on the reservation in the summer and accompanies her to Kansas during the school year.

On May 2, 1986, the Tribal Court granted temporary custody of Shannon to his paternal grandmother after he was physically abused while at his mother's home. No party objected to the Tribal Court's jurisdiction. Thereafter, on May 16, 1986, at the request of Stuart Wahnee, the Assistant District Attorney for Kiowa County, Oklahoma filed a petition in the State Court requesting the State Court to determine that Shannon was a deprived child and to terminate Rhonda Wahnee's parental rights. As a matter of standard procedure, the petition also included Kristy. A hearing was held in the State Court on the matter on May 27, 1987, and the State Court noted that the Tribal Court wished to assume jurisdiction over the case. Rhonda Wahnee attended the hearing with her court-appointed counsel, and, through counsel, orally objected to the proposed transfer to the Tribal Court. The case was continued in State Court until July 27, 1987.

On June 9, 1987, the Tribal Court filed a motion in the State Court to transfer the case to the Tribal Court pursuant to the ICWA, 25 U.S.C. § 1911(b).[3] The State Court issued an order to transfer, granting the motion on June 11, 1987. The Tribal Court issued an order accepting jurisdiction on June 26, 1987, and made Shannon and Kristy wards of the Tribal Court. On November 28, 1988, the Tribal Court, after a full hearing and a review hearing, specifically held: "The Comanche Tribal Children's Court has Personal and Subject Matter jurisdiction over this matter all in accord with the Comanche Indian Child Welfare Code and

the Indian Child Welfare Act of 1978, P.L. 95–608."

Between September 4, 1987, and August 16, 1990, the Tribal Court conducted several custody and related hearings at which the Tribal Court recited that it had jurisdiction over both the subject matter and the parties. The majority of the hearings were attended by all parties. Rhonda Wahnee did not file any objections regarding the Tribal Court's jurisdiction, nor object to any of the specific hearings. On June 5, 1990, Shannon died.

On February 11, 1991, Rhonda Wahnee appeared through counsel in the State Court on a motion to vacate its order of transfer. The basis of the motion was that Rhonda Wahnee's oral objection to the transfer of the case at the May 27, 1987, hearing, made transfer of the action to the Tribal Court improper under the ICWA, 25 U.S.C. § 1911(b). The matter was heard by Judge Hovis, who issued an order vacating the transfer. Judge Hovis concluded that in view of Rhonda Wahnee's prior objection, the transfer order was void pursuant to § 1911(b).

On March 8, 1991, the Tribe filed in the State Court a motion requesting the State Court to rescind its February 11, 1991, order, or, in the alternative, to transfer the action back to the Tribal Court. The Tribe asserted that pursuant to the ICWA, 25 U.S.C. § 1911(a), the Tribal Court, not the State Court, had exclusive jurisdiction over Kristy. The Tribe further alleged, *inter alia*, that the State Court had no jurisdiction to vacate its prior transfer order; because once the transfer was done, the State Court lost all power in the case.

The State Court issued an order on June 5, 1991, denying the Tribe's motion to transfer and entering summary judgment in favor of Rhonda Wahnee. *See In re Shannon James Wahnee; DOB: 4/19/84 and Kristy Wahnee; DOB: 7/19/82*, No. JFJ–86–12 (D.Ct.3d Jud. D.Okla. Kiowa County June 5, 1991). Judge Hovis found that at the time of the filing of the original petition in the State Court, Rhonda and Stuart Wahnee were not resid-

---

3. The Tribal Court also moved for transfer of the case under the Comanche Indian Child Welfare

Code, 1–1–5(1); however, that code is not at issue in this case.

ing on tribal land and therefore 25 U.S.C. § 1911(a) did not apply. He further ruled that the order transferring the case to the Tribal Court was void *ab initio* due to Rhonda Wahnee's timely objection. Blanche Wahnee appealed to the Supreme Court of Oklahoma through an application to assume original jurisdiction. Her application was denied on September 24, 1991.

On October 17, 1991, the Tribe filed in the Tribal Court a motion to intervene and a motion for summary judgment requesting the Tribal Court to reaffirm its repeated holdings that it had jurisdiction over Kristy's case. The Tribal Court issued an extensive order on February 5, 1992, granting summary judgment in favor of the Tribe and holding that the Tribal Court had exclusive jurisdiction to adjudicate Kristy's case pursuant to 25 U.S.C. § 1911(a) based on its findings that Kristy's was a resident of the reservation, was a domiciliary of the reservation, and was a ward of the Tribal Court. *See In re Kristy Ann Wahnee; DOB 07/19/82,* No. JV–86–9 (Comanche Tribal Child.Ct. Feb. 5, 1992). The action in this Court followed.

The Tribe's complaint in this Court, filed on October 28, 1992, seeks a declaratory judgment as to whether the Tribal Court or the State Court has exclusive jurisdiction to adjudicate matters relating to Kristy. Alternatively, the Tribe seeks a declaratory judgment directing that the case be transferred to the District Court of Douglas County, Kansas. Rhonda Wahnee filed a motion to intervene as a defendant on November 25, 1992, which the Court granted on December 21, 1992.

Motions to dismiss were filed by the State Court and Judge Hovis on December 8, 1992, and by Rhonda Wahnee on December 31, 1992. The Tribe filed responses thereto, and the Court held a hearing on the motions on July 21, 1993. The Court granted the motions to dismiss as to the Tribe's application to transfer, but denied the motions as to the overall jurisdictional dispute presented by this action. The matter is presently before the Court on the next round of motions, the Tribe's motion for summary judgment.

The Tribe's motion for summary judgment seeks an order from the Court declaring that

pursuant to the ICWA, 25 U.S.C. § 1911(a), the Tribal Court has exclusive jurisdiction to adjudicate matters relating to Kristy. The Tribe also moves the Court to enjoin defendants from entering or enforcing any orders with regard to Kristy, other than transferring all matters regarding Kristy to the Tribal Court. Defendants and Rhonda Wahnee request the Court to deny the motion. They allege that the prerequisites of 25 U.S.C. § 1911(a) are not present here, and, further, that the original transfer of Kristy's case to the Tribal Court was improper under 25 U.S.C. § 1911(b), as Blanche Wahnee objected to that transfer.

## II.

Summary judgment is appropriate if the pleadings and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 561 F.2d 202, 204 (10th Cir.1977). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. *Board of Educ. v. Pico,* 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Disputes involving the interpretation and application of statutory language, such as this motion, are

appropriate for summary judgment disposition.

### III.

The motion before the Court requires an application of the ICWA.[4] The ICWA was the product of rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32, 109 S.Ct. 1597, 1599, 104 L.Ed.2d 29 (1989). Studies undertaken by the Association on American Indian Affairs in 1969 and 1974, and presented in ICWA Senate hearings, showed that twenty-five to thirty-five percent of all Indian children had been separated from their families and placed in adoptive families, foster care or institutions. *Id.* The Senate also focused on the harm to the tribes themselves by the wholesale removal of their children. *Id.* at 34, 109 S.Ct. at 1600. For example, Calvin Isaac, Tribal Chief of the Mississippi Band of Choctaw Indians and representative of the National Tribal Chairmen's Association, testified as follows:

"Culturally, the chances of Indian survival are significantly reduced if our children, the only real means for the transmission of the tribal heritage, are to be raised in non-Indian homes and denied exposure to the ways of their People. Furthermore, these practices seriously undercut the tribes' ability to continue as self-governing communities. Probably in no area is it more important that tribal sovereignty be respected than in an area as socially and culturally determinative as family relationships."

*Id.* (citing Hearings on S. 1214 before the Subcommittee on Indian Affairs and Public Lands of the House Committee on Interior and Insular Affairs, 95th Cong., 2d Sess. (1978)).

The Congressional findings that were incorporated into the ICWA reflect these sentiments. *Id.* at 35, 109 S.Ct. at 1601. The following Congressional findings are set forth at 25 U.S.C. § 1901:

(3) that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children ...;

(4) that an alarming high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarming high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; and

(5) that the States, exercising their recognized jurisdiction over Indian child custody

---

4. Although not raised as an issue by the parties, the Court notes that this action concerns an "intra-family" dispute and that there is a split among jurisdictions as to whether the ICWA applies to such actions. The seminal case for the proposition that the ICWA does not apply to intra-family disputes is *In re Bertelson*, 189 Mont. 524, 617 P.2d 121 (1980), where the non-Indian mother of an Indian child gave custody of her child to the child's paternal grandparents, who were both enrolled members of an Indian tribe. When the mother sought to regain custody, the grandparents refused. The Montana Supreme Court held that the dispute did not fall within the ambit of the ICWA, stating: "The Act is not directed at disputes between Indian families regarding custody of Indian children; rather, its intent is to preserve Indian culture values under circumstances in which an Indian child is placed in a foster home or other protective institution." *Id.* 617 P.2d at 125. Several courts, including the Oklahoma Supreme Court, have expressly refused to follow the *Bertelson* analysis. In *In re*

*Q.G.M.*, 808 P.2d 684 (Okla.1991), the Oklahoma Supreme Court ruled that the *Bertelson* analysis is contrary to the express provisions of the Act. The court stated that 25 U.S.C. § 1903(1) defines custody proceedings under the ICWA, and the only two proceedings excluded from the ambit of the ICWA are custody provisions of a divorce decree and delinquency proceedings. *Id.* at 687–88. Noting that express exceptions in a statute exclude all other exceptions, the court concluded that "[r]ecognition of a third exception—that the act will not apply to intra-family custody disputes—would require judicial legislation rather than statutory interpretation." *Id.* at 688. This Court finds that reasoning persuasive, and acknowledges that the ICWA is applicable here. *See also In re A.K.H.*, 502 N.W.2d 790, 794 (Minn.1993) ("We believe the better-reasoned line of cases holds that the [ICWA] does not exclude intra-family disputes"), *review denied*, (Minn. Aug. 24, 1993); *In re A.B.M. v. M.H.*, 651 P.2d 1170 (Alaska 1982), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983).

proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.

25 U.S.C. § 1901.

At the heart of the ICWA are its provisions concerning jurisdiction over Indian child custody proceedings, which are codified at 25 U.S.C. § 1911. *Holyfield*, 490 U.S. at 36, 109 S.Ct. at 1601; *see generally*, Michael E. Connelly, *Tribal Jurisdiction Under Section 1911(b) of the Indian Child Welfare Act of 1978: Are the States Respecting Indian Sovereignty?*, 23 N.M.L.Rev. 479 (1993); Roger A. Tellinghuisen, *The Indian Child Welfare Act of 1978: A Practical Guide With [Limited] Commentary*, 34 S.D.L.Rev. 660 (1988/89). Section 1911 grants Indian tribes jurisdiction over child custody proceedings.[5] 25 U.S.C. § 1911; *Roman–Nose v. New Mexico Dept. of Human Servs.*, 967 F.2d 435, 437–38 (10th Cir.1992). Specifically, § 1911(a) provides that if the Indian child "resides or is domiciled within the reservation," the Indian tribe has exclusive jurisdiction over child custody proceedings relating to that child, except where jurisdiction is otherwise vested in the state by existing federal law. 25 U.S.C. § 1911(a). Section 1911(a) further provides that if the Indian child is a ward of the tribal court, the Tribe "shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child." 25 U.S.C. § 1911(a).

■ Section 1911(b), on the other hand, applies to state court proceedings for the foster care placement or termination of parental rights in cases where the Indian child is "not domiciled or residing within the reservation." 25 U.S.C. § 1911(b). Section 1911(b) requires a state court to "transfer such proceeding to the jurisdiction of the tribe" upon petition by either parent, the Indian custodian or the child's tribe, absent objection by either parent, good cause to the contrary or declination of jurisdiction by the tribal court. 25 U.S.C. § 1911(b). Section 1911(b) creates concurrent, but presumptively tribal jurisdiction. *Holyfield*, 490 U.S. at 36, 109 S.Ct. at 1601.

Section 1911(c) grants the Indian child's tribe and its Indian custodian the right to "intervene at any point" in a state court proceeding for the foster care placement or termination of parental rights of that child. 25 U.S.C. § 1911(c). Finally, § 1911(d) requires all courts in the United States to "give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings" to the same extent that the courts give full faith and credit to those of any other entity. 25 U.S.C. § 1911(d).

5. Section 1911 states in full:
 **(a) Exclusive jurisdiction**
 An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.
 **(b) Transfer of proceedings; declination by tribal court**
 In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the

Indian child's tribe: *Provided,* That such transfer shall be subject to declination by the tribal court of such tribe.
 **(c) State court proceedings; intervention**
 In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding.
 **(d) Full faith and credit to public acts, records, and judicial proceedings of Indian tribes**
 The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity.
 25 U.S.C. § 1911.

In this case, the Tribe alleges that the Tribal Court has exclusive jurisdiction over Kristy's custody proceedings under 25 U.S.C. § 1911(a), as the undisputed facts establish that Kristy resides within the reservation, is domiciled within the reservation, and is a ward of the Tribal Court. Additionally, the Tribe maintains that pursuant to 25 U.S.C. § 1911(d), the State Court is required to give full faith and credit to the findings of the Tribal Court that it has jurisdiction over the action.

Judge Hovis, the State Court and Rhonda Wahnee, in response, argue that the Tribal Court does not have exclusive jurisdiction over this action under 25 U.S.C. § 1911(a), because Kristy is neither a resident nor domicile of the reservation. They also allege that the Tribal Court's declaration of Kristy as a ward of the Tribal Court was improper since Rhonda Wahnee objected to the transfer of the action as provided by 25 U.S.C. § 1911(b). They further assert that under 25 U.S.C. § 1911(d), the State Court is not required to afford full faith and credit to the Tribe's determinations that it has jurisdiction.

### IV.

■ As noted earlier, when an Indian child "resides or is domiciled within the reservation" or is a ward of the tribal court, the tribal court has exclusive jurisdiction over custody proceedings relating to that child. 25 U.S.C. § 1911(a). Thus, a plain language reading of 25 U.S.C. § 1911(a) mandates that jurisdiction over Kristy's custody dispute rests exclusively with the Tribal Court if Kristy: (1) is a resident of the reservation; (2) is a domicile of the reservation; or, (3) is a ward of the Tribal Court. 25 U.S.C. § 1911(a). Under that language, the Tribal Court has exclusive jurisdiction if *any* of these conditions is met. *See Holyfield*, 490 U.S. at 47, 109 S.Ct. at 1607–1608 (acknowledging that in the absence of a statutory definition courts start with the assumption that the legislative purpose is expressed in the ordinary meaning of the words used); *Cave Springs Pub. Sch. Dist. v. Blair*, 613

P.2d 1046, 1048 (Okla.1980) ("Where the language of a statute is plain and unambiguous, and its meaning is clear ... the statute will be accorded the meaning as expressed by the language therein employed."); *Seventeen Hundred Peoria, Inc. v. Tulsa*, 422 P.2d 840, 843–44 (Okla.1966) (statutory construction should ordinarily be done by a consideration of the language of the statute). It is the Tribe's position that all three of the conditions of § 1911(a) are present in this case, thus vesting exclusive jurisdiction over Kristy's custody proceedings in the Tribal Court.

### A.

■ The Tribe first asserts that exclusive jurisdiction over Kristy's custody proceedings rests exclusively with the Tribal Court pursuant to 25 U.S.C. § 1911(a) because Kristy is a "resident" of the KCA reservation. The Tribe argues that it is undisputed that as of at least January 24, 1986, the date the power of attorney was executed, Kristy has lived exclusively with Blanche Wahnee who is a resident of the reservation.[6] Therefore, the Tribe argues, jurisdiction over Kristy's custody dispute rests exclusively with the Tribal Court.

Having reviewed the undisputed evidence in this case and the plain language of § 1911(a), the Court is persuaded to agree. "Residency" status is "determined from the physical fact of that person's living in a particular place." *Rosario v. I.N.S.*, 962 F.2d 220, 224 (2d Cir.1992) ("Residency means an established abode, for personal or business reasons, permanent for a time."); *see also Martinez v. Bynum*, 461 U.S. 321, 330–31, 103 S.Ct. 1838, 1843–44, 75 L.Ed.2d 879 (1983). A person may be a resident of one locality, but be domiciled in another. *Holyfield*, 490 U.S. at 48, 109 S.Ct. at 1608; *Rosario*, 962 F.2d at 224.

Section 1911(a) provides for exclusive tribal jurisdiction if an Indian child "resides *or* is domiciled within the reservation." 25 U.S.C. § 1911(a) (emphasis supplied). Although the typical case construing the ICWA involves a

---

6. The Tribe maintains that the Tribal Court retains exclusive jurisdiction over Kristy even when

she leaves the reservation and accompanies her aunt to Kansas.

dispute in which the child is deemed domiciled on the reservation, yet resides *off* the reservation, *see, e.g. Holyfield,* 490 U.S. at 47, 109 S.Ct. at 1607 (where the children at issue had never been physically present on the reservation), this case presents a situation where at all times since the initiation of the custody dispute the Indian child in question resided *on* the reservation, without regard to her domicile. *See Native Village of Venetie I.R.A. Council v. Alaska,* 944 F.2d 548, 555 (9th Cir.1991) ("state courts are powerless to resolve child-custody disputes concerning Indian children who reside on their tribal reservations; jurisdiction is exclusive in the tribe"); *In re Adoption of Halloway,* 732 P.2d 962, 968 (Utah 1986) ("With respect to those resident on reservations, the tribes' jurisdiction is exclusive."), *aff'd Navajo Nation v. District Court for Utah County, Fourth Judicial Dist.,* 831 F.2d 929 (10th Cir.1987).

The petition commencing Kristy and Shannon's action was filed on May 16, 1986. The undisputed facts here establish that Kristy has lived with Blanche Wahnee on the KCA reservation since at least January 24, 1986, when Stuart and Rhonda Wahnee executed the power of attorney granting custody and control of Kristy to Blanche Wahnee. There is no evidence indicating that Kristy's residence has changed since that time, other than occasional visits with Rhonda Wahnee. There is also no evidence from which a rea-

sonable conclusion can be drawn that Kristy's residence, for purposes of the ICWA, is in Kansas.[7] Thus, Kristy has "resided" within the reservation since the initiation of this action.

In view of the undisputed material facts establishing that Kristy has resided within the reservation at all times relevant hereto, the Court concludes that under the express language of 25 U.S.C. § 1911(a), exclusive jurisdiction over custody proceedings relating to Kristy rests exclusively with the Tribal Court, not the State Court. The Court reaches this determination without regard to Kristy's domicile or wardship status.

## B.

■ Although Kristy's residence status is dispositive of this matter, the Tribe further argues that the Tribal Court has exclusive jurisdiction over Kristy under 25 U.S.C. § 1911(a) because Kristy is "domiciled" within the KCA reservation. The Tribe asserts that it is undisputed that Kristy's guardian, Blanche Wahnee, is a domiciliary of the KCA reservation. Therefore, the Tribe argues, Kristy's domicile is the KCA reservation, as Kristy takes the domicile of Blanche.

In *Holyfield,* 490 U.S. at 47, 109 S.Ct. at 1607, the Supreme Court was called upon to interpret "domicile" as that term is used in the ICWA.[8] The Court determined that fed-

---

7. The Court sees no need to address the period of time that Kristy accompanies her aunt to Kansas, as the Court is persuaded that for purposes of this decision Kristy's residence is the reservation.

8. *Holyfield* presented a case of unmarried Indian parents who sought an adoption by non-Indians for their newly-born twins. 490 U.S. at 37, 109 S.Ct. at 1602. Both parents were enrolled members of an Indian tribe, and were residents and domiciliaries of a reservation. *Id.* They travelled, however, some 200 miles away from the reservation for the birth of the twins, and executed consent-to-adoption forms in state court. *Id.* An adoption decree was subsequently entered by the state court, and the tribe moved to vacate the adoption on the ground that under the ICWA, 25 U.S.C. § 1911(a), exclusive jurisdiction over the twins was vested in the tribal court. *Id.* at 38–39, 109 S.Ct. at 1603. The state trial court overruled the tribal motion and the Supreme Court of Mississippi affirmed, finding the domicile of the children to be off the reservation. *Id.* at 39–40, 109 S.Ct. at 1603.

Looking to 25 U.S.C. § 1911(a), the Supreme Court examined whether under the ICWA definition of "domicile," the children should not be deemed domiciliaries of the reservation due to the following facts: (1) they had never been physically present there, and (2) they were voluntarily surrendered by their parents. *Id.* at 47, 109 S.Ct. at 1607. The Court held, first, that federal law, not state law, controlled the definition of "domicile." *Id.* at 47, 109 S.Ct. at 1607. Next, the Court determined that domicile is established by physical presence in a place, coupled with an intent to remain there. *Id.* at 48, 109 S.Ct. at 1608. The Court noted that "[f]or adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Id.* However, "since most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents." *Id.* Thus, the Court concluded, it is entirely logical that " '[o]n occasion, a child's domicile of origin will be in a

eral law, not state law, controlled the definition of "domicile" for purposes of the ICWA, stating:

> That we are dealing with a uniform federal rather than a state definition does not, of course, prevent us from drawing on general state-law principles to determine "the ordinary meaning of the words used." Well-settled state law can inform our understanding of what Congress had in mind when it employed a term it did not define. Accordingly, we find it helpful to borrow established common-law principles of domicile to the extent that they are not inconsistent with the objectives of the congressional scheme.

*Id.* at 47–48, 109 S.Ct. at 1607–08.

In this case, the Tribe maintains that under a federal definition of domicile, Kristy's domicile should be deemed that of Blanche Wahnee. The parties have based arguments on passages in the Restatement (Second) of Conflict of Laws § 22 almost as if it were statutory in effect. In view of this emphasis, the Restatement warrants examination.

The Tribe first argues that comment h to the Restatement § 22 addresses a minor's domicile when the minor is under a guardianship, and provides that the child "should be domiciled in the place where he has been sent by the guardian to live and make his home." Restatement (Second) of Conflict of Laws § 22 cmt. h. The Tribe maintains that

place where the child has never been.'" *Id.* (quoting Restatement (Second) of Conflict of Laws § 14 cmt. b). As the domicile of the Indian mother (and father) had been, at all relevant times, on the reservation, the Court concluded that at their birth the twin babies were "also domiciled on the reservation, even though they themselves had never been there." *Id.* at 48–49, 109 S.Ct. at 1608.

The Court further found that this result could not be any different simply because the twins were voluntarily surrendered by their mother, as tribal jurisdiction under § 1911(a) "was not meant to be defeated by the actions of individual members of the tribe, for Congress was concerned not solely about the interests of Indian children and families, but also about the impact on the tribes themselves of the large numbers of Indian children adopted by non-Indians." *Id.* at 49, 109 S.Ct. at 1608. The Court noted that a rule of domicile that would permit individual Indian parents to defeat the ICWA's jurisdictional scheme by, *i.e.*, giving birth off the reservation,

Blanche Wahnee is Kristy's guardian, or at least her guardian by estoppel, because it is undisputed that Blanche Wahnee has a legal power of attorney that lawfully vests in her custody and control over Kristy, including the responsibility of taking care of Kristy and managing her property and rights during her minority.[9]

· In response, defendants and Rhonda Wahnee argue that comment is not applicable here as it states that the "child's domicil[e] does not follow that of his parents once a guardian of his person has been appointed." *Id.* They assert that this contemplates a guardian who has been *appointed* by the Court, and that Blanche Wahnee was not.

The Tribe does not dispute that Blanche Wahnee was never appointed guardian of Kristy by a court, and this Court, therefore, adopts defendants and Rhonda Wahnee's position with respect to this question. Indeed, comment i to the Restatement § 22 expressly states that it is applicable if "the child is abandoned by both parents or by a surviving parent, and *no guardian of the child's person is appointed.*" *Id.* cmt. i (emphasis supplied). Thus, comment h is not controlling here.

Next, the Tribe alleges that comment i to the Restatement § 22, alternatively, requires the conclusion they seek. Comment i provides:

would be inconsistent with the purpose the ICWA was intended to accomplish. *Id.* at 51–52, 109 S.Ct. at 1609–1610. Accordingly, the Court concluded that since the twins were domiciled on the reservation when adoption proceedings were begun, the tribal court possessed exclusive jurisdiction pursuant to 25 U.S.C. § 1911(a). *Id.* at 53, 109 S.Ct. at 1611.

9. The Tribe cites Black's Law Dictionary, which defines "guardian" as:

> A person lawfully invested with the power, and charged with the duty, of taking care of the person and managing the property and rights of another person, who, for defect of age, undertaking, or self-control, is considered incapable of administering his own affairs. One who legally has the care and management of the person, or the estate, or both, of a child during its minority.

It also defines "guardian by estoppel" as "one who assumes to act as a guardian without legal authority."

[I]f the child is abandoned by both parents or by a surviving parent, and no guardian of the child's person is appointed, the child should acquire a domicil[e] at the home of a ... person who stands *in loco parentis* to him and with whom he lives. Absent some compelling reasons to the contrary, the child's domicil[e] should be in the place to which he is most closely related.

*Id.* The Tribe argues that Blanche Wahnee is a blood relative who has had exclusive and continuous custody of Kristy since January 24, 1986, and that Kristy was abandoned by both of her parents in 1986, when they signed the power of attorney granting to Blanche Wahnee the sole responsibility for Kristy. The Tribe also argues that Rhonda Wahnee has not provided any financial support for Kristy since she has lived with Blanche Wahnee, and alleges that this is further evidence of abandonment. The Tribe further contends that the undisputed evidence clearly establishes that Blanche Wahnee stands *in loco parentis* to Kristy.

Defendants and Rhonda Wahnee respond that comment i does not require that Kristy's domicile be deemed that of Blanche Wahnee because comment i contemplates *abandonment* by a parent, and the record here does not indicate that Rhonda Wahnee has abandoned Kristy. They argue that in executing the power of attorney, Rhonda and Stuart Wahnee did not intend to permanently relinquish their parental rights and obligations over Kristy. They contend that the power of attorney did not purport to describe final arrangements for Kristy's care and custody, and, further, that temporary awards of custody are insufficient to render a temporary custodian's domicile that of the child. They also assert that throughout the State Court proceedings, Rhonda Wahnee has sought and obtained visitation rights with Kristy, and that no determination has been made by a court to finally terminate Rhonda Wahnee's parental rights.

"Domicile" is established by "physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Holyfield,* 490 U.S. at 48, 109 S.Ct. at 1608. "Since most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is [usually] determined by that of their parents." *Id.; see also Dunlap v. Buchanan,* 741 F.2d 165, 167 (8th Cir.1984) ("The domicile of a minor is generally determined by reference to another person because minors are legally incapable of forming the requisite intent to regard a place as home"); *Clyde IV v. Ludwig Hardware Store, Inc.,* 815 F.Supp. 688, 690 (S.D.N.Y.1993). However, "[s]pecial rules are applied to determine the domicil[e] of a minor who does not live with a parent." Restatement (Second) of Conflict of Laws § 22. This is the situation the Court addresses in this case.

As argued by the Tribe, comment i to the Restatement § 22 provides that if a child is abandoned by its parents, "the child should acquire a domicil[e] at the home of a ... person who stands *in loco parentis* to him and with whom he lives." *Id.* cmt. i. Furthermore, "the child's domicil[e] should be in the place to which he is most closely related." *Id.* This Court is unwilling to declare that Kristy has been abandoned by her parents for purposes of Kristy's *custody* proceedings. Indeed, this is a determination that need not be made here. However, upon consideration of analogous case law that has examined the issue of domicile of a minor who does not live with his parents in the context of determining diversity jurisdiction, the Court is willing to so conclude for purposes of determining *jurisdiction* over Kristy's action.

In *Elliott v. Krear,* 466 F.Supp. 444 (E.D.Va.1979), where an infant was living with his grandparents in the state where he was born and continuously lived, and his divorced mother with custody had recently established citizenship in another state, the infant was held to be a citizen of his grandparents' state for diversity purposes. The issue in that case was what was the citizenship for diversity jurisdiction purposes of a child who was a minor at the time of injury underlying the dispute and at the time the complaint was filed. *Id.* at 446. If the mother's citizenship controlled, the court would have jurisdiction. *Id.* The court analyzed the issue in terms of "citizenship," noting that "[t]he elements necessary to establish citizenship are the same as those to establish

domicile: residence combined with an intent to remain indefinitely." *Id.* at 445. Although the child's mother, a citizen of California at all pertinent times had legal custody, the child actually lived with his grandparents, citizens of Virginia. *Id.* They provided for his support and had him in their actual custody and control. *Id.*

The court first looked to the purpose of diversity jurisdiction, which it noted " 'was to give a citizen of one state access to an unbiased court to protect him from parochialism if he is forced into litigation in another state in which he was a stranger and of which his opponent was a citizen.' " *Id.* at 446 (quoting *Ziady v. Curley*, 396 F.2d 873, 875 (4th Cir. 1968)). The court then concluded that, under the facts of the case, the purpose underlying diversity jurisdiction would not support jurisdiction. *Id.* at 447. According to the court:

> Neither the plaintiff in this case, his mother, nor his grandparents is a stranger to Virginia. Plaintiff was born in Virginia and has spent all of his life in this Commonwealth except for a one-year stay in California. Plaintiff's mother considers herself a Virginian, and plaintiff's grandparents are Virginia citizens and were Virginia citizens at the time this suit was filed. Moreover, although plaintiff's mother was apparently awarded custody of plaintiff, it is clear that plaintiff's mother was not exercising control and did not have actual custody of the plaintiff at the time this suit was filed. The record clearly reflects the fact that plaintiff's grandparents were and had been acting *in loco parentis* in providing for plaintiff's support, maintenance, protection and guidance at the time this suit was filed. Plaintiff's grandparents made the important decisions affecting plaintiff's well-being without any reference to plaintiff's mother. Under these circumstances, the Court holds that the citizenship of the plaintiff for federal diversity jurisdiction purposes should be considered the same as the citizenship of plaintiff's grandparents.

*Id.*

The reasoning of *Elliott* was adopted and applied in *Linville v. Price*, 572 F.Supp. 345 (S.D.W.Va.1983), where a minor who lived with an aunt and uncle who provided for virtually all of his needs was held to be domiciled in their state rather than the state of his parents, even though he had visited his parents at times and they had retained custody throughout. The plaintiff there spent most of his minority in West Virginia living with an aunt and uncle who were citizens of that state. *Id.* at 346. He was essentially in their custody and control and they provided for his support and maintenance. *Id.* All of his schooling was obtained in West Virginia, and he never lived in Michigan with his parents for any extended period of time and always returned to West Virginia. *Id.* He also did not change his domicile to Michigan after attaining his majority. *Id.* Relying upon the reasoning of *Elliott*, the court concluded that the plaintiff's aunt and uncle were acting *in loco parentis* to him, and that the plaintiff's domicile for federal diversity jurisdiction purposes was that of the aunt and uncle. *Id.* at 348.

This Court believes the situation before it is sufficiently analogous to that of *Elliott* and *Linville* to support the application of their reasoning here. *See Holyfield*, 490 U.S. at 48, 109 S.Ct. at 1608 (permitting resort to common-law principles "to the extent that they are not inconsistent with the objectives of the congressional scheme"). In this case, the undisputed material facts establish that Kristy was born at the Indian Hospital and lived primarily on the reservation until July 1985, when the Wahnee family moved into low-income HUD housing in Mountain View, Oklahoma. Upon execution of the power of attorney on January 24, 1986, Kristy returned to the reservation and has resided with Blanche Wahnee on the reservation since at least that time. Although the language of the power of attorney does not purport permanently to relinquish Stuart and Rhonda Wahnee's parental rights, the record documents that Blanche Wahnee, not Kristy's parents, has at all relevant times had *de facto* custody and control over Kristy, made all material decisions with regard to Kristy, and provided for all of Kristy's support and maintenance. Blanche Wahnee, for all practical purposes, has stood *in loco parentis* to Kristy. Accordingly, the Court con-

cludes that Kristy's domicile can be properly deemed that of Blanche Wahnee for jurisdictional purposes. *See Elliott,* 466 F.Supp. at 447; *Linville,* 572 F.Supp. at 348.

The Court further notes that this conclusion is consistent with the express purposes of the ICWA. In enacting the jurisdictional provisions of the ICWA, "Congress intended that as a general principal, Indian tribes should have authority to determine custody issues involving Indian children." *Halloway,* 732 P.2d at 968. With respect to those resident on reservations, the tribe's jurisdiction is exclusive. 25 U.S.C. § 1911(a). However, even with respect to children that reside off the reservation, Congress mandated that state courts cede jurisdiction to tribal courts except where certain very stringent criteria were satisfied. 25 U.S.C. § 1911(b). Congress, in effect, used the domicile of the child as "a basis for distinguishing between those who maintain close ties with the tribe and, therefore, should be subject to its exclusive control and those who are sufficiently removed from the tribe and its ways to justify giving jurisdiction over them to non-Indian courts in certain circumstances." *Halloway,* 732 P.2d at 968. In this case, Kristy has certainly maintained close ties with the Tribe of which she is a member.

Furthermore, the Supreme Court in *Holyfield* recognized that an Indian tribe has a "protectible interest" in its Indian children that is distinct from but on a parity with the interest of the child's parents. According to the Court:

> The protection of this tribal interest is at the core of the ICWA, which recognizes that the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents. This relationship between Indian tribes and Indian children domiciled on the reservation finds no parallel in other ethnic cultures found in the United States. It is a relationship that many non-Indians find difficult to understand and that non-Indian courts are slow to recognize. It is precisely in recognition of this relationship, however, that the ICWA designates the tribal court as the exclusive forum for the determination of custody and adoption matters for reserva-tion-domiciled Indian children, and the preferred forum for nondomiciliary Indian children.

*Holyfield,* 490 at 52–53, 1610–1611 (citing *Halloway,* 732 P.2d at 969–70)). The Court's conclusion today advances the interest of the Tribe in Kristy.

The Court therefore concludes that as Kristy was domiciled within the KCA reservation at all relevant times hereto, exclusive jurisdiction over custody matters relating to Kristy rests exclusively with the Tribal Court, not the State Court, as provided by 25 U.S.C. § 1911(a).

C.

▪ As a further basis in support of its motion, the Tribe alleges that the Tribal Court has exclusive jurisdiction over Kristy's custody proceedings pursuant to 25 U.S.C. § 1911(a) because Kristy is a "ward" of the Tribal Court. The Tribe asserts that it is undisputed that Kristy was made a ward of the Tribal Court on June 26, 1987. Therefore, the Tribe argues, jurisdiction over Kristy rests exclusively with the Tribal Court under § 1911(a). Defendants and Rhonda Wahnee, in response, allege that the Tribal Court's order declaring Kristy a ward of the Tribal Court was void *ab initio* since Rhonda Wahnee objected to the transfer of the action at the May 27, 1987, hearing, as provided by 25 U.S.C. § 1911(b).

Section 1911(a) provides that once an Indian child becomes a "ward" of the tribal court, "the Indian tribe shall *retain* exclusive jurisdiction, notwithstanding the residence or domicile of the child." 25 U.S.C. § 1911(a) (emphasis supplied). Judicial interpretation of this provision has established that "§ 1911(a) can pertain only to such wardship orders of the tribal court which are entered while the child is residing or domiciled on the reservation." *In re Adoption of T.R.M. and J.Q.,* 525 N.E.2d 298, 306 (Ind.1988), *cert. denied,* 490 U.S. 1069, 109 S.Ct. 2072, 104 L.Ed.2d 636 (1989). This allows the tribal court to retain exclusive jurisdiction when the domicile or residence of the child has changed after the initial tribal court order of wardship. *Id.* Thus, the tribal court "could not be empowered to effectuate the status of

a child as a 'ward of the court' relying upon § 1911(a) where the child was never domiciled on the reservation, and was not residing on the reservation at the time the tribal court exercised jurisdiction and entered the wardship order." *Id.*

The undisputed material facts of this case establish that the Tribal Court issued an order accepting jurisdiction and declaring Kristy a ward of the Tribal Court on June 26, 1987. The Court has already ruled that on that date, Kristy was both a resident and a domiciliary of the KCA reservation. Thus, pursuant to 25 U.S.C. § 1911(a), the Tribal Court had exclusive jurisdiction to issue the order, and exclusive jurisdiction over Kristy's custody proceedings is retained in the Tribal Court, without regard to Kristy's subsequent residence or domicile. *See In re M.R.D.B.,* 241 Mont. 455, 787 P.2d 1219, 1223 (1990) (finding exclusive jurisdiction pursuant to § 1911(a) because the Indian child was a ward of the tribal court).

■ Although defendants and Rhonda Wahnee maintain that the Tribal Court's order declaring Kristy a ward of the tribal court was void *ab initio* under 25 U.S.C. § 1911(b) due to Rhonda Wahnee's objection to the transfer of the case, the Court is compelled to disagree. Section 1911(b), by its express terms, applies to proceedings where the Indian child in question is "not domiciled or residing within the reservation of the Indian child's tribe." 25 U.S.C. § 1911(b). Section 1911(b) is, therefore, not applicable here. *See In re M.R.D.B.,* 241 Mont. 455, 787 P.2d at 1223 (finding § 1911(b) inapplicable because the tribal court had exclusive jurisdiction because the Indian child was a ward of the tribal court). Pursuant to 25 U.S.C. § 1911(a), jurisdiction over Kristy's case rests exclusively with the Tribal Court, not the State Court.

## V.

■ As an additional matter, the Tribe alleges that pursuant to 25 U.S.C. § 1911(d),

the State Court must give full faith and credit to the rulings of the Tribal Court that it has jurisdiction over Kristy's case. The Tribe states that on November 22, 1988, the Tribal Court specifically found that it had jurisdiction, and repeatedly recited its jurisdiction in subsequent decisions.[10] The Tribe maintains that those rulings are entitled to full faith and credit by the State Court; the State Court was bound to honor them when it sought to reassume jurisdiction over Kristy's case in 1991. The Tribe moves the Court to rule, as a matter of law, that the decisions of the Tribal Court declaring it to have jurisdiction are controlling.

Defendants and Rhonda Wahnee respond that the State Court is not required to afford full faith and credit to the Tribal Court's determinations because the Tribal Court lacked jurisdiction to enter those rulings, as the transfer of the case to the Tribal Court was improper due to Rhonda Wahnee's objection to that transfer pursuant to 25 U.S.C. § 1911(b). They thus argue that the Tribal Court's findings that it has jurisdiction over Kristy's custody proceedings are void.

As stated earlier, § 1911(d) requires that all courts in the United States give full faith and credit to the public acts, records, and judicial proceedings of an Indian tribe in custody proceedings to the same extent that full faith and credit is given to the public acts, records, and judicial proceedings of any other entity. 25 U.S.C. § 1911(d); *see also Roman–Nose,* 967 F.2d at 437 ("State courts must give full faith and credit to tribal court actions in custody proceedings."); *Native Village of Stevens v. Smith,* 770 F.2d 1486, 1488 (9th Cir.1985) (federal court determined that a tribal counsel decision to remove a child from his home and place him under tribal custody must be given full faith and credit by the state under § 1911(d)), *cert. denied,* 475 U.S. 1121, 106 S.Ct. 1640, 90 L.Ed.2d 185 (1986). Full faith and credit is required regardless of whether tribal juris-

---

**10.** The Tribe's initial brief requests the Court to declare that the State Court must give full faith and credit to the Tribal Court's November 22, 1988, order, wherein the Tribal Court specifically ruled that it had personal and subject matter jurisdiction over the action; however, subsequent briefing by the Tribe appears to request full faith and credit with regard to all of the subsequent rulings by the Tribal Court, including the February 5, 1992, order granting summary judgment in favor of the Tribe.

diction is exclusive of or concurrent with state jurisdiction. *Native Village of Venetie I.R.A. Council,* 944 F.2d at 555; *In re C.W.,* 239 Neb. 817, 479 N.W.2d 105 (1992). Thus, if the Tribal Court has jurisdiction over Kristy's custody dispute, the State Court must give full faith and credit to the Tribal Court's decrees.[11]

Although Rhonda Wahnee alleges that the rulings of the Tribal Court are void because she objected to the June 11, 1987, transfer of the case, the Court finds to the contrary. The Court has already concluded that the Tribal Court, in fact, has *exclusive* jurisdiction over Kristy's custody dispute pursuant to 25 U.S.C. § 1911(a), since Kristy, at all relevant times, was a resident of the reservation, was a domiciliary of the reservation, and was a ward of the Tribal Court. Furthermore, the Court has found that Rhonda Wahnee's objection pursuant to 25 U.S.C. § 1911(b) does not mandate a contrary result, as § 1911(b) is not applicable here because Kristy was both a resident and a domiciliary of the reservation. Therefore, all orders entered by the State Court subsequent to its transfer of the action to the Tribal Court are void for lack of jurisdiction.[12] *See Halloway,* 732 P.2d at 970 ("[The Indian child] was domiciled on the reservation and was subject to the tribal court's exclusive jurisdiction under [§ 1911(a)] of the ICWA.

Therefore, the Utah court lacked jurisdiction and its orders were void. Any further proceedings regarding [his] custody or adoption must be had in the Navajo courts."). The Tribal Court's determinations regarding Kristy are entitled to full faith and credit to the extent of those of any other entity.

## VI.

 Lastly, the Tribe alleges that the State Court lost any jurisdiction it may have had over Kristy's case in 1987, when it transferred the case to the Tribal Court. The Tribe argues that the State Court ignored the black letter principle that courts have no jurisdiction to consider anything, including reconsideration of a transfer order, once a transfer has been granted and the record actually transmitted. The Tribe thus maintains that the State Court's reassertion of jurisdiction and declaration that the transfer order was void, almost four years after the transfer and assumption of jurisdiction by the Tribal Court, was meaningless.

Defendants and Rhonda Wahnee maintain that the original transfer of Kristy's case to the Tribal Court was void, as Rhonda Wahnee objected to that transfer in accordance with 25 U.S.C. § 1911(b). They therefore submit that when the State Court found the initial transfer improper, it could reassert jurisdiction to correct its error.

11. *Compare Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, n. 9, 102 S.Ct. 2099, 2104, n. 9, 72 L.Ed.2d 492 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment."); *Sherrer v. Sherrer,* 334 U.S. 343, 350, 68 S.Ct. 1087, 1090, 92 L.Ed. 1429 (1948) (footnote omitted) ("Insofar as cases originating in the federal courts are concerned, the rule has evolved that the doctrine of *res judicata* applies to adjudications relating either to jurisdiction of the person or of the subject matter where such adjudications have been made in proceedings in which those questions were in issue and in which the parties were given full opportunity to litigate."); *Stoll v. Gottlieb,* 305 U.S. 165, 172, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938) (footnote omitted) ("We see no reason why a court, in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the

litigation."); *United States v. Van Cauwenberghe,* 934 F.2d 1048, 1059 (9th Cir.1991) (noting that the general rule of finality of jurisdictional determinations is not without exceptions, *i.e.,* federal preemption).

12. Although exclusive jurisdiction over Kristy's custody dispute was vested in the Tribal Court at the initiation of Kristy's case, the Court does not contest that the State Court properly held jurisdiction to determine whether it had jurisdiction. A state court "has a right and a need to determine its own jurisdiction in Indian child [custody] cases brought before it, and a judge making such a determination clearly would be acting within the scope of his judicial capacity, regardless of the propriety of his ruling on the jurisdictional question." *Navajo Nation v. District Court for Utah County, Fourth Judicial Dist.,* 624 F.Supp. 130, 134 (D.Utah 1985), *later proceeding, In re Adoption of Halloway,* 732 P.2d 962 (Utah 1986), *aff'd, Navajo Nation v. District Court for Utah County, Fourth Judicial Dist.,* 831 F.2d 929 (10th Cir.1987).

■ The Court addresses this issue as an alternative basis in support of the Court's conclusion that the State Court does not have jurisdiction over Kristy's case. Oklahoma recognizes the right of one court to transfer an action brought improperly in that court, to another court where the action should have been filed. *See, e.g., Pribram v. Fouts,* 736 P.2d 513, 515 (Okla.1987) (Oklahoma courts have a "common law power to transfer a case from one county where venue is improper to another county having proper venue in the interest of efficient administration of justice."). Further, the Oklahoma Supreme Court has stated that "[t]he court to which a case is transferred does not acquire jurisdiction until the papers and records are received, but *thereafter has jurisdiction for all purposes.*" *Gulf Oil Co. v. Woodson,* 505 P.2d 484, 490 (Okla.1972) (emphasis supplied) (citations omitted).[13]

■ Oklahoma law, likewise, recognizes that courts retain for a limited period plenary control over their terminal decisions. *Schepp v. Hess,* 770 P.2d 34, 37 (Okla.1989). This power was historically invocable at any time during the term of court in which the judgment was rendered; the authority hence came to be known as "term-time". *Id.* at 36–37. Although terms of court have been abolished in Oklahoma, the common law term-time power survived and came to be codified at Okla.Stat. tit. 12, § 1031.1, and the time limit for invoking this ancient control is now fixed at thirty days from the decision; once timely invoked, the trial court's term-time power may be exercised after the thirty-day period. Okla.Stat. tit. 12, § 1301.1; *Schepp,* 770 P.2d at 37; *Orthopedic Clinic v. Jennings,* 481 P.2d 139, 140–41 (Okla.1971).[14]

In the case at bar, the State Court entered its transfer order on June 11, 1987, stating: "The Court Clerk of Kiowa County is hereby ordered and directed to transmit forthwith all files, pleadings, instruments and a certified copy of the docket sheets herein to [the Tribal Court]. . . ." The Tribal Court accepted jurisdiction on June 26, 1987, and, although the record does not denote the exact date that the actual record was received, it is evident that the record was docketed promptly. Thereafter, the Tribal Court as-

---

13. Oklahoma's analysis of a transferee court's jurisdiction is consistent with the decisions of federal courts construing transfers made pursuant to 28 U.S.C. § 1404(a) in cases involving transfers made under the doctrine of *forum non conveniens.* The Tenth Circuit examined such transfers in *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509 (10th Cir.1991), and stated that "[o]nce the files in a case are transferred physically to the court in the transferee district, the transferor court loses all jurisdiction over the case, including the power to review the transfer." *Id.* at 1516–17 (footnote omitted). This loss of jurisdiction becomes effective when the papers in the transferred case are docked in the transferee court. *Id.* at 1517. This date also marks the termination of appellate jurisdiction in the transferor circuit. *Id.* Unless the district court has transferred the case without proper authority, or the transferee court lacks jurisdiction over the case, the transfer order is unreviewable by the transferor circuit as of that date. *Id. See also Petersen v. Douglas County Bank & Trust Co.,* 940 F.2d 1389 (10th Cir.1991) (applying *Chrysler Credit* ); *Robbins v. Pocket Beverage Co.,* 779 F.2d 351 (7th Cir.1985) (district court retained jurisdiction to vacate its transfer order where motion for reconsideration was granted before files were received by transferee court); *Lafayette Coal Co. v. Gilman Paper Co.,* 640 F.Supp. 1 (N.D.Ill.1986) (federal court no longer had jurisdiction to reconsider its order transferring case to Georgia after complete file of record had been sent to clerk of court and receipt of record was acknowledged); *Pendleton v. Armortec, Inc.,* 729 F.Supp. 495 (M.D.La.1989) (federal court lost jurisdiction to reconsider transfer order after record was transmitted to transferee district).

14. Section 1031.1 in its present form provides in pertinent part:

A. A court may correct, open, modify or vacate a judgment, decree or appealable order on its own initiative within thirty (30) days after the judgment, decree or appealable order . . . has been filed with the court clerk. Notice of the court's action shall be given as directed by the court to all affected parties.

B. On motion of a party made within thirty (30) days after a judgment, decree or appealable order . . . has been filed with the court clerk, the court may correct, open, modify or vacate the judgment, decree or appealable order. Where the judgment, decree or appealable order states the matter was taken under advisement, the motion to correct, open, modify, or vacate the judgment, decree or appealable order, if made, must be filed within thirty (30) days from the date of mailing of a file-stamped copy of the judgment, decree or appealable order to the moving party. The moving party shall give notice to all affected parties.

Okla.Stat. tit. 12, § 1031.1.

sumed jurisdiction, made Kristy a ward of the Tribal Court and held several custody and related hearings at which it repeatedly recited that it had jurisdiction over both the subject matter and the parties, all without objection by Rhonda Wahnee.

The State Court's order vacating the June 11, 1987, transfer was not entered until February 11, 1991, almost four years after the 1987, transfer. In his order, Judge Hovis ruled that the transfer order was void because "[w]here an objection is timely raised by a non-Indian parent, transfer cannot be made pursuant to 25 U.S.C. § 1911(b)." Not only was that ruling incorrect when applied here due to the inapplicability of § 1911(b),[15] but the State Court, at that time in 1991, had indeed lost jurisdiction to vacate the prior order. The record had already been transferred, and the Tribal Court had already asserted its exclusive jurisdiction. *See Gulf Oil,* 505 P.2d at 490. Assuming, *arguendo,* that the State Court sought to vacate the transfer order pursuant to Okla.Stat. tit. 12, § 1031.1 (and assuming that the order was a "judgment, decree or appealable order" that is subject to the statute), the State Court's assertion of jurisdiction upon Rhonda Wahnee's 1991, motion to vacate, almost four years later, was untimely. Thus, even § 1031.1 would not grant the State Court authority to vacate the transfer order under the circumstances of this case. *C.f. Southeastern, Inc. v. Doty,* 481 P.2d 144 (Okla. 1971) (Where *within* thirty days after trial court had rendered judgment, motion requesting that such judgment be vacated was filed, assumption of jurisdiction on the same cause of action by trial court in another county did not divest first court of continuing jurisdiction.). In any event, the transfer of the case was correct in view of the exclusive jurisdiction vested in the Tribal Court pursuant to the ICWA. *See* 25 U.S.C. § 1911(a). The State Court had no jurisdiction to reconsider and vacate the transfer order, and its vacation of that order is void for lack of jurisdiction.

## VII.

In conclusion, the Court is persuaded that the undisputed material facts of this case establish that exclusive jurisdiction over this matter rests with the Tribal Court, not the State Court, pursuant to 25 U.S.C. § 1911(a). The Court rules that the requirements of § 1911(a) are met in this case based on three findings, any of which would grant exclusive jurisdiction over Kristy's custody action to the Tribal Court: (1) Kristy at all times relevant hereto has resided within the reservation; (2) Kristy at all times relevant hereto has been domiciled within the reservation; and (3) Kristy is a ward of the Tribal Court. In addition, the State Court is required to give full faith and credit to the decrees of the Tribal Court, in accordance with 25 U.S.C. § 1911(d).

Alternatively, the Court rules that the State Court lacks jurisdiction over this matter on the basis that the State Court had no jurisdiction to reconsider and vacate its order transferring the case to the Tribal Court. The State Court's order vacating the transfer is void.

In view of the foregoing, summary judgment in favor of the Tribe is GRANTED. The State Court is directed to abandon any further participation in this matter to the Tribal Court, consistent with this opinion.

It is so ordered.

---

15. The Court does not dispute that a transfer pursuant to 25 U.S.C. § 1911(b) over an objection is error; rather, the Court rejects the application of § 1911(b) to this case. Under § 1911, as a whole, the State Court has power to transfer under certain predicate conditions. Assuming, *arguendo,* that the state judge at the time of transfer thought he was acting under § 1911(b), which is not at all clear from his transfer order, he had power to transfer. At worst, by failing to heed the significance of Rhonda Wahnee's objection to transfer, he committed error. Error is corrected by appeal. No one appealed, or sought a prohibitory writ. Error does not render an order void, but only voidable under prescribed procedures not followed here.