Allen and Leslie BROWN, on Behalf of Crystal BROWN, a minor, and Melanie Brown, a minor, Petitioners,

v.

Betty RICE, Native American Family Services, and the Prairie Band of Potawatomi Indians Tribal Council, Respondents.

No. 90–4232–R.

United States District Court,
D. Kansas.

March 15, 1991.

Lynette F. Petty, Kansas Legal Services, Inc., Topeka, Kan., Judith A. Jones, Legal Services of Northeast Kansas, Seneca, Kan., for petitioners.

Scott D. McKenzie, Topeka, Kan., for respondents.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

Plaintiffs or petitioners in this case are Allen and Leslie Brown acting on behalf of Crystal and Melanie Brown. The defendants or respondents are Betty Rice, a social worker with Native American Family Services and the Prairie Band of Potawatomi Indians Tribal Council. Native American Family Services (NAFS) is a child protective services agency which works with three Indian tribes in the area, including the Potawatomi tribe. NAFS is licensed with the State of Kansas and is also governed by regulations of the Bureau of Indian Affairs and the traditions and rules of Indian tribes.

The petition asks this court to order respondents to release Crystal and Melanie Brown (particularly Melanie Brown) to the custody of petitioners. Crystal and Melanie Brown have been declared wards of the Administrative Body Court of the Prairie Band of Potawatomi Indians and placed by this tribal court in the custody, care and control of NAFS. The tribal court for the Prairie Band of Potawatomi Indians is the Tribal Council, which is also the executive governing body of the tribe. In this opinion, we shall refer to the Tribal Council, in most instances, as the tribal court.

At the direction of the tribal court, Melanie Brown has been placed by NAFS in the foster care of her paternal grandparents. The tribal court has granted petitioners care over Crystal Brown, although there is continuing supervision by NAFS. Betty Rice has worked directly with Melanie and Crystal Brown, their parents, and (we assume) the paternal grandparents on behalf of NAFS.

Melanie (age 14) and Crystal Brown (age 8) are of ¼ Indian blood and are enrolled members of the Potawatomi tribe, as is their father, Allen Brown, who is of ½ Indian blood. Melanie comes from a previous marriage of her father. Crystal is the only child produced from the marriage of Allen and Leslie Brown. Leslie Brown has two boys from another marriage (Tony and Michael). These boys, who are not of Indian ancestry, have been adopted by Allen Brown. No member of this family has ever resided on the Potawatomi reservation. They currently live in Topeka, Kansas. The paternal grandparents, with whom Melanie Brown has been placed, also live in Topeka, Kansas. Allen Brown occasionally hunts or fishes on the Potawatomi reservation. But, this is the only connection the family has to the reservation, aside from enrollment as members of the Potawatomi tribe.

On November 2, 1990, the four children of the Brown family were taken into protective custody by the Topeka police. Betty Rice and NAFS were notified either by

the police or county child protection authorities. Betty Rice took custody of Melanie and Crystal. The two boys were temporarily placed in a foster home by State of Kansas authorities. Apparently, it is customary to ask NAFS to supervise the custody of Indian children taken into protective custody by state and local authorities, regardless of whether the children live on or off Indian territory.

A hearing was scheduled regarding all four children in Shawnee County District Court on November 6, 1990. Meanwhile, Betty Rice contacted the executive director of NAFS, Mr. Virgil Free. They decided to ask for an order of temporary custody from the Potawatomi tribal court. This was granted. Documents were also drafted on behalf of the Potawatomi tribe requesting transfer of jurisdiction from the state district court, intervention in the state district court proceedings, and temporary emergency custody of Melanie and Crystal Brown.

On November 6, 1990, prior to any hearing, the assistant district attorney, Timothy Henderson, met with the state district judge and moved, *ex parte*, for the dismissal of proceedings regarding Crystal and Melanie. Earlier the judge and Mr. Henderson had been given the motions for intervention, transfer and custody by Betty Rice. The position of the Potawatomi tribe did not cause the assistant district attorney to request dismissal of the proceedings involving Crystal and Melanie. After speaking with a social worker and considering the caseload pressures on the system, he thought it would be best to ask for a "family preservation referral" for the two boys and to dismiss proceedings regarding the two girls.[1]

The state district judge believed that the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901 *et seq.*, applied and required transfer of proceedings to the Potawatomi tribal court, regardless of the position of the parents. However, no formal transfer order or procedure was followed. The case of Melanie and Crystal was simply dismissed with the notation that the ICWA

applied. To reiterate, Leslie and Allen Brown were not consulted or present when this decision was made. No formal action was taken on the tribe's motions for transfer, intervention or custody. But, Melanie and Crystal remained in the custody of NAFS.

On November 14, 1990, petitioners received notice of a hearing before the Administrative Body Court of the Prairie Band of Potawatomi Indians on November 16, 1990 at 10:00 a.m. At the hearing, petitioners were present and represented by counsel. Betty Rice made a report to the tribal court. Petitioners objected to the tribal court's jurisdiction. Petitioners were invited to submit their jurisdictional objections in writing. The tribal court determined that it had jurisdiction to act, and it adopted the recommendations of Betty Rice. Upon these recommendations, the tribal court maintained custody of the two girls, placing Melanie with her paternal grandparents and Crystal with the petitioners. The tribal court's decision was recorded in writing approximately three months later, on February 16, 1991. (Exhibit 400). This order states in part:

> The Court advised it has jurisdiction over this case, the parties and the subject matter and that proper notice had been given to all interested parties that could be located.

A review of the custody arrangement was conducted by the tribal court on February 25, 1991, two days before this case was scheduled for its first hearing in this court. Petitioners were present and again objected to the tribal court's jurisdiction. The tribal court reaffirmed its jurisdiction. Visitation of Melanie by petitioners was expanded, and a reintegration plan was established so that Melanie could be permanently placed in petitioners' home within 90 days.

There is no tribal judicial authority or appellate body above the Potawatomi tribal court (or Tribal Council). A lengthy tribal code has been formulated for the Prairie Band of Potawatomi Indians. The code has not been formally adopted and may

---

1. The State's "family preservation case" regarding the boys was closed as of February 22, 1991.

The boys are living with Allen and Leslie Brown.

still be under revision. The testimony before this court, however, was that the tribal court has been following the code for the last six or seven months. Reference to the code is made in the tribal court's order regarding the November 16, 1990 hearing. Portions of the code have been produced for this court's inspection and shall be placed in the record. However, prior to the first hearing before this court, counsel for petitioners could not obtain a copy of the code.

The tribal code provides that tribal courts shall have personal jurisdiction "over all defendants served in cases arising within the territorial jurisdiction and over all persons consenting to such jurisdiction." Section 104. "Territorial jurisdiction" is confined to Indian country under the code. Section 103. The code further provides:

> The District Court shall have exclusive original jurisdiction in all proceedings and matters when such children are found within the jurisdiction of these Courts, or when jurisdiction is transferred to these Courts pursuant to law.

Section 106.

■ *Subject matter jurisdiction.* The court believes it has subject matter jurisdiction over this case. Petitioners essentially challenge the power and authority of the tribal court to restrict the actions of Crystal and Melanie. The Supreme Court has held that challenges to the exercise of jurisdiction by a tribal court present a question of federal common law which can be heard in a federal court under the general federal question statute, 28 U.S.C. § 1331. *National Farmers Union Ins. Co. v. Crow Tribe*, 471 U.S. 845, 853, 105 S.Ct. 2447, 2452, 85 L.Ed.2d 818 (1985). Other courts have also held that parents may challenge the jurisdiction of tribal courts to make custody determinations under the habeas corpus provisions set out in 25 U.S.C. § 1303. *DeMent v. Oglala Sioux Tribal Court*, 874 F.2d 510 (8th Cir.1989); *U.S. v. Cobell*, 503 F.2d 790 (9th Cir.1974). This would be another means of presenting basically the same federal question to this court.

*Exhaustion of tribal remedies.* The Supreme Court has made clear that before a federal court scrutinizes the assertion of tribal court jurisdiction, the tribal court should have the "first opportunity to evaluate the factual and legal bases for the challenge." *National Farmers Union Ins. Co. v. Crow Tribe, supra,* 471 U.S. at 856, 105 S.Ct. at 2454. A tribal court should have "a full opportunity to determine its own jurisdiction and to rectify any errors it may have made." *Id.* at 857, 105 S.Ct. at 2454. However, exhaustion of tribal remedies would not be required "where an assertion of tribal jurisdiction 'is motivated by a desire to harass or is conducted in bad faith,' cf. *Juidice v. Vail*, 430 U.S. 327, 338, 97 S.Ct. 1211, 1218–19, 51 L.Ed.2d 376 (1977), or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *Id.* at 856 n. 21, 105 S.Ct. at 2454 n. 21.

■ In this case, the court believes that petitioners have sufficiently exhausted their tribal remedies. The tribal court has twice considered the custody of Crystal and Melanie Brown, despite the oral jurisdictional challenges of counsel for petitioners. Any appeal or request for reconsideration would be to the same tribal court. Although petitioners' counsel has failed to present a written jurisdictional objection to the tribal court, there is no reason to believe that the same arguments in writing would be given different consideration than the oral arguments of counsel or that exhaustion would provide this court with a better view of the jurisdictional issue. Moreover, petitioners' counsel has been hampered for some months by the delay in receiving a written order from the tribal court and the delay in receiving a copy of the tribal code from tribal authorities. Meanwhile, a very serious issue regarding interference with parental rights is pending. The court acknowledges the need to encourage tribal sovereignty and the development of adequate tribal judicial procedures. But, considering all the matters which are relevant to the application of the exhaustion doctrine, we believe the circumstances of this case warrant a finding that the exhaustion doctrine has been satisfied.

See *National Farmers Union Ins. Co. v. Crow Tribe,* 736 F.2d 1320, 1326 (9th Cir. 1984) (Wright, J., dissenting in part and concurring in the result) (exhaustion is a flexible requirement); *U.S. v. Cobell, supra,* 503 F.2d at 793 (same).

■ In addition, the court believes it is quite clear that the tribal court has exceeded the lawful limits of its jurisdiction in this matter. Under the tribal code, the jurisdiction of the tribal court is limited to those matters which: arise on the reservation; concern persons served in cases arising on the reservation or persons consenting to tribal court jurisdiction; and concern juveniles found within the jurisdiction of the tribal court or whose cases have been transferred to tribal court pursuant to law.

This matter has not arisen from the reservation. Petitioners have not consented to tribal court jurisdiction. The children in question are not within the territorial or personal jurisdiction of the tribal court. Moreover, this matter has not been transferred to tribal court "pursuant to law." There was no formal transfer of a case from Shawnee County District Court to the Potawatomi tribal court. No transfer order was issued. No files were transmitted. The Shawnee County action was simply dismissed. The proceedings at issue can easily be viewed as having been initiated in tribal court, since it is admitted in respondents' answer that tribal court proceedings were commenced on November 5, 1990— the day before the Shawnee County proceedings were dismissed or "transferred."

■ But, if a transfer was intended, the transfer was not "pursuant to law." Under the Indian Child Welfare Act, 25 U.S.C.

1911(b), a case involving children not domiciled on the reservation cannot be transferred from state court without the consent of the parents.[2] In this case, the parents were not consulted prior to any transfer action. But, it is clear that they would have objected to transfer, had they been given the opportunity. Of course, they did object after the transfer. So, the law was not followed.

■ The tribal court is not bound to accept the transfer of a case from a state court under any conditions. See 25 U.S.C. § 1911(b). But, if the transfer is contrary to the federal law or the tribe's own jurisdictional requirements, it should not be accepted. See *Christianson v. Colt Industries Operating Corp.,* 798 F.2d 1051 (7th Cir.1986) (Seventh Circuit Court of Appeals returns case transferred from the Court of Appeals for the Federal Circuit, holding, contrary to the Federal Circuit, that the case arose under federal patent laws and therefore that the Federal Circuit had exclusive jurisdiction); *In re Cragar Industries, Inc.,* 706 F.2d 503 (5th Cir.1983) (transferee court should accept transfer except under "impelling or unusual circumstances" or if the order is "manifestly erroneous"). In this case, any transfer from the state court should have been considered manifestly erroneous and should not have been accepted, because the case is outside the tribal court's own jurisdictional limits.

For the above-stated reasons, it is clear to the court that the tribal court has acted outside of the jurisdictional boundaries of the tribal code and, therefore, further exhaustion of tribal remedies should not be required.[3]

---

**2.** This section provides: "In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, *absent objection by either parent,* upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided,* That such transfer shall be subject to declination by the tribal court of such tribe." (Emphasis supplied).

**3.** Even if the tribal code was not considered binding because it has not been formally

adopted, one commentator has suggested that this is not the type of case which has customarily been considered within the jurisdiction of tribal courts.

> Where the marriage is between an Indian and non-Indian and the parties have not had significant contact with the reservation, the tribal court's authority is more problematic.... Significantly, Congress has not authorized such tribal authority in the context of child-custody disputes under the ICWA. Without federal legislative authorization, the tribe's assertion of jurisdiction would rest on tenuous ground. In any event, Indian tribes typically have not granted their tribal courts such expansive authority.

*Service of process.* Counsel for respondent Betty Rice has asserted a defect in service of process. But, petitioners assert that service was accomplished by certified mail in accordance with Rule 4 of the rules governing section 2254 cases. This appears satisfactory to the court.

■ *Joinder of an Indispensable Party.* Respondents have also asserted that the state district court should be joined as a party. The court disagrees. Petitioners are not challenging the order dismissing the state proceedings in this matter. Petitioners are challenging the authority of the tribal court. The state district court does not have an interest in such a challenge and is not an indispensable party to this case. We further note that the State Attorney General has been notified of this action but has chosen not to enter an appearance.

■ *Sovereign Immunity.* In this case, petitioners are suing the Tribal Council—the administrative body of the Prairie Band of Potawatomi Indians—for the actions of the Council as a tribal court. The Tribal Council asserts that it is immune from being sued. We believe the following discussion from a recent Ninth Circuit case provides the controlling principles on this issue.

Indian tribes and their governing bodies possess common-law immunity from suit. They may not be sued absent express and unequivocal waiver of immunity by the tribe or abrogation of tribal immunity by Congress. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58–59, 98 S.Ct. 1670, 1676–77, 56 L.Ed.2d 106 (1978). . . .

n. 3 The Tribes are immune from suit even though the complaints allege the Tribes acted beyond their authority, *Chemehuevi Indian Tribe v. California State Bd. of Equalization,* 757 F.2d 1047, 1052 (9th Cir.), *rev'd in part on other grounds,* 474 U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985), and even though [plaintiff] seeks only "affirmative" relief. *See, e.g., Santa Clara Pueblo,* 436 U.S. at 59, 98 S.Ct. at 1677 ("Nothing on the face of [the Indian Civil Rights Act] purports to subject tribes to the jurisdiction of the federal courts in civil actions for injunctive or declaratory relief."); *Hardin v. White Mountain Apache Tribe,* 779 F.2d 476, 478 (9th Cir.1985) (suit for declaratory and injunctive relief, as well as damages, barred by tribal immunity); see also *Chemehuevi,* 757 F.2d at 1052 n. 6 ("[tribal] sovereign immunity is not a discretionary doctrine that may be applied as a remedy depending on the equities of a given situation.") **[End of footnote].**

But sovereign immunity does not extend to officials acting pursuant to an allegedly unconstitutional statute. *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 156–57 n. 6, 98 S.Ct. 988, 993–94 n. 6, 55 L.Ed.2d 179 (1978); *Larson v. Domestic and Foreign Commerce Corp.,* 337 U.S. 682, 690 & n. 22, 69 S.Ct. 1457, 1461 & n. 22, 93 L.Ed. 1628 (1949); *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908). No reason has been suggested for not applying this rule to tribal officials, and the Supreme Court suggested its applicability in *Santa Clara Pueblo,* 436 U.S. at 59, 98 S.Ct. at 1677. . . . We . . . conclude that tribal sovereign immunity does not bar a suit for prospective relief against tribal officers allegedly acting in violation of federal law. *California v. Harvier,* 700 F.2d 1217, 1221, 1224 (9th Cir.1983) (Norris, J., dissenting).

*Burlington Northern Railroad Company v. Blackfeet Tribe,* 924 F.2d 899, 901 (9th Cir.1991). Upon these principles, we believe the Tribal Council should be dismissed from this action. Cf., *U.S. v. Yakima Tribal Court,* 806 F.2d 853, 861 (9th Cir. 1986) (suit against tribal court permitted only because United States may sue Indian tribes and override sovereign immunity); *Settler v. Yakima Tribal Court,* 419 F.2d 486, 490 (9th Cir.1969) (habeas action against tribal court remanded for district court to name precise individual who heads tribal court or all individual members of tribal court as respondents).

■ *Is Betty Rice a proper respondent in this case?* The tribal court has declared

Atwood, *Fighting Over Indian Children,* 36 U.C. L.A. L.REV. 1051, 1081 (1989).

that Melanie and Crystal Brown are wards of the Tribe. The tribal court has placed the children in the care, custody and control of NAFS for appropriate placement and family services. In turn, NAFS has worked primarily through Betty Rice on this matter. She has made reports and recommendations on behalf of NAFS to the tribal court. She has met with the children and the parents. Ms. Rice appears to be directly in charge of the care, custody and control of the children for NAFS, although she discusses and seeks approval of actions with Mr. Virgil Free, the executive director of NAFS. To repeat, NAFS has made a temporary foster placement of Melanie Brown with her paternal grandparents. Crystal Brown has been placed with petitioners, subject to the supervision of NAFS, under the authority of the tribal court.

█ It has been argued that NAFS or the paternal grandparents or both should be named as respondents. It could also be argued that individual members of the tribal court should be named as respondents. Indeed, petitioners have now moved to amend the petition to add Virgil Free, the paternal grandparents (Richard and Mary Brown), and a judge of the tribal court (Luther Wahwahsuck) as respondents in this case. These persons may well be proper respondents. The court knows of no reason to deny the motion to amend.

But, this does not mean that Betty Rice is not a proper respondent in this case. Ms. Rice, through her official position as a social worker for NAFS, is exercising significant powers of custody, care and control over the children. She has an interest in opposing the petitioners' requested relief, which her counsel has expressed in this case. If the court directs that she cancel the placement of Melanie Brown with her paternal grandparents and that she cease supervising the care and custody of Melanie and Crystal Brown, then it appears that petitioners will attain what they seek from this litigation. From these practical standpoints, it appears appropriate that Betty Rice be named a respondent in this case. See generally, *Reimnitz v. State's Attorney,* 761 F.2d 405, 408–09 (7th Cir.1985) (discussing practical criteria for naming respondents in habeas actions); *Wisconsin Potowatomies v. Wilsey,* 377 F.Supp. 1153 (M.D.Fla.1974) (relatives with whom children had been placed for prospective adoption need not be named as respondents in habeas action seeking release of children); 39A C.J.S. *Habeas Corpus* § 164 (1976) (persons assisting in wrongful detention may be joined in a habeas action).

*Conclusion.* As discussed above with regard to the exhaustion of tribal remedies question, the court believes that the tribal court's assertion of jurisdiction over Melanie and Crystal Brown, contrary to the wishes of Allen and Leslie Brown, exceeds the jurisdictional power of the tribal court and, therefore, is contrary to federal common law. The Tribal Council is immune from suit and must be dismissed from this action. Betty Rice is a proper respondent in this case and the court hereby directs Ms. Rice: to cancel the placement of Melanie Brown with her paternal grandparents; to place Melanie Brown in the custody of Allen and Leslie Brown; and to cease the exercise of custody, care and control over Crystal and Melanie Brown. Petitioners' motion to amend shall be granted. The newly named respondents should be served with a copy of this order and shall be directed to show cause, within ten days of service of the order, why similar relief should not be directed against them. If the issuance of this order serves to render this case moot, then petitioners can move for the dismissal of the action against the newly named respondents.

The court wishes to stress that the relief ordered in this case is based strictly upon jurisdictional grounds. The court does not express or imply any criticism of the child protection efforts of Betty Rice, NAFS, or the Tribal Council.

IT IS SO ORDERED.

### APPENDIX
### *Tribal Code*
### Title 2

Section 103. TERRITORIAL JURISDICTION

The Territorial Jurisdiction of the Courts shall extend to all territory described as

**1466**

Indian Country within the meaning of Section 1151 of Title 18 of the United States Code over which the Prairie Band of Potawatomi Tribe has authority, including tribal or individual, trust, non-trust and restricted land, and including all land owned by tribal agencies in their own name, all waters, minerals and wildlife, and any other such land, or interest in land, which may be subsequently acquired by virtue of Executive Order, a declaration or regulation of the United States Department of Interior, a declaration or order of a Court of competent jurisdiction, by purchase, gift, relinquishment, or by any other lawful means.

Section 104. CIVIL JURISDICTION

The Courts shall have jurisdiction over all actions arising under or within the Constitution, laws, or treaties of the Prairie Band of Potawatomi Indian Tribe. Personal jurisdiction shall exist over all defendants served in cases arising within the territorial jurisdiction and over all persons consenting to such jurisdiction. The act of entry within the territorial jurisdiction shall be considered consent with respect to any civil dispute arising out of such entry.

Section 106. JUVENILE JURISDICTION

The District Court shall have exclusive original jurisdiction in all proceedings and matters when such children are found within the jurisdiction of these Courts, or when jurisdiction is transferred to these Courts pursuant to law. The Court of Appeals shall hear appeals in juvenile cases as in other civil actions.