[No. A115771. First Dist., Div. Five. Aug. 28, 2007.]

In re M.M., a Person Coming Under the Juvenile Court Law.
HUMBOLDT COUNTY DEPARTMENT OF HEALTH AND HUMAN
SERVICES, Plaintiff and Appellant, v.
MICHAEL T., Defendant and Respondent;
KARUK TRIBE OF CALIFORNIA et al., Interveners and Respondents;
M.M., Appellant.

**COUNSEL**

Ralph Faust, Interim County Counsel, and Marilyn Dutkus, Deputy County Counsel, for Plaintiff and Appellant.

Deborah Dentler for Appellant M.M.

Linda K. Harvie for Defendant and Respondent.

California Indian Legal Services and Samuel D. Hough for Intervener and Respondent Karuk Tribe of California.

Law Office of Gradstein & Gorman and Seth F. Gorman for Interveners and Respondents Marilyn R. and Jason M.

**OPINION**

**NEEDHAM, J.**—This appeal from an order transferring a case from a California juvenile court to an Indian tribal court pursuant to the Indian Child Welfare Act of 1978 (ICWA), title 25 United States Code section 1901 et seq., raises a question of first impression in California—does the transfer of a juvenile dependency case from state court to tribal court pursuant to title 25 United States Code section 1911(b) deprive the California courts of jurisdiction over the dependency case and thus preclude any appeal from the transfer order? We conclude that it does.

M.M. (Minor) appeals from an order of the Humboldt County Juvenile Court that transferred his dependency proceeding to the Karuk Tribal Court. The Humboldt County Juvenile Court transmitted its case files to the tribal court, the tribal court accepted jurisdiction, and it declared Minor a ward of that court. Because no party requested a stay of the transfer order prior to completion of the transfer, we hold that the California court lost all power to act in the matter upon completion of the transfer of the case. We further hold that as a California appellate court we can provide no effective relief to Minor, because we have no power to order the courts of a separate sovereign—the Karuk Tribe—to return the case to the state courts. We must therefore dismiss this appeal for lack of jurisdiction.

FACTUAL AND PROCEDURAL BACKGROUND

Minor was born on January 24, 2005. On February 10, 2005, the Humboldt County Department of Health and Human Services (the Department) filed a petition alleging that Minor was a dependent child within the meaning of Welfare and Institutions Code section 300, subdivisions (b), (g), and (j). The petition noted that Minor "may be a member of, or eligible for, membership in a federally recognized Indian tribe."

Minor's mother, Roseanna A., is an enrolled member of the Hoopa Valley Tribe. Roseanna identified Chester M. as Minor's father, and Chester signed a declaration of paternity at the hospital the day after Minor's birth; Chester is also listed as the father of the child on Minor's birth certificate. Chester M. is an enrolled member of the Hoopa Valley Tribe. On February 15, 2005, the juvenile court found that Chester M. was Minor's presumed father. Minor was later placed in foster care with Roseanna A.'s relative, Marilyn R. and her partner, Jason M.

The Department's investigation indicated that Minor was reported to be eligible for membership in the Hoopa Valley, Karuk, Yurok, and Pomo tribes. In February 2005, a Department social worker spoke with a representative of the Hoopa Valley Tribe, who indicated that the tribe did not wish to intervene in the case at that time.[1] On March 17, 2005, the Department sent a "Notice of Involuntary Child Custody Proceedings for an Indian Child" (Judicial Council Forms, form JV-135) to the Hoopa Valley Tribal Council, the Karuk Tribe of California, and the Yurok Tribe, as well as to the Office of the Regional Solicitor of the Department of the Interior.

At the March 29, 2005 jurisdictional hearing, the juvenile court sustained amended jurisdictional allegations. The court found that Minor was a child described in subdivisions (b) and (j) of Welfare and Institutions Code section 300. Although the juvenile court found that notice had been given as required by law, the court left open the question whether notice to the tribes had been adequate. On April 18, 2005, the juvenile court declared Minor a dependent of the court and ordered reunification services for both mother and the presumed father.

On September 22, 2005, the Humboldt County Superior Court received a notice of intervention from the Hoopa Valley Tribe. At the six-month review hearing five days later, the juvenile court granted the request to intervene and continued the review hearing, which was eventually calendared for November 21, 2005. The six-month status review report noted that Minor had applied for enrollment in the Hoopa Valley Tribe but that the eligibility determination process was not yet complete.

At the contested six-month review hearing on November 21, the court terminated reunification services to both Roseanna A. and Chester M. It then set a permanency planning hearing under Welfare and Institutions Code section 366.26 for March 20, 2006. The court further ordered the Department to submit its report by February 21, 2006.

At a hearing on February 28, the juvenile court noted that it had not received the Department's report. At the same hearing, however, the court and all counsel confirmed receipt of a letter dated February 22, 2006, from respondent Michael T. Michael T. is an enrolled member of the Karuk Tribe. In the letter, Michael T. explained that he had been told that he was Minor's father and expressed a desire to retain his parental rights. He also requested a

---

[1] In state court proceedings for the foster care placement of, or termination of parental rights to, an Indian child, the ICWA grants the Indian child's tribe "a right to intervene at any point in the proceeding." (25 U.S.C. § 1911(c).)

blood test to establish his paternity over Minor. The Department opposed the request for a blood test, since Chester M. had already been declared Minor's presumed father. The juvenile court did not rule on the request at the hearing.

On March 10, 2006, the Karuk Tribe sent a letter to the Department's social worker stating that the tribe had no records for Minor and that the tribe would support the Department and the Hoopa Valley Tribe in the adoption of Minor. At the time this letter was sent the Karuk Tribe had not been provided with notice that Michael T. had contacted the juvenile court claiming to be Minor's father.

At the March 20, 2006 permanency planning hearing, Michael T. appeared and addressed the court.[2] He stated that he "would like to establish a paternity test (*sic*)." Counsel for Minor and Chester M. argued that Michael T. lacked standing to request a paternity test because only the presumed father could request such a test. The juvenile court made no explicit ruling on Michael T.'s request, stating only that "the presumed father is Chester M[.] By law, there's only one presumed father." The court then proceeded to terminate the parental rights of both Roseanna A. and Chester M., as well as the rights of "any and all other persons claiming to be the mother or father of the child."

In May 2006, the Hoopa Valley Tribe performed a paternity test by drawing blood from Minor, Roseanna A., and Michael T. The test showed a 99.99 percent probability that Michael T. was Minor's father. The Karuk Tribal Council subsequently approved a resolution finding that Minor was eligible for membership in the Karuk Tribe and was the natural child of a member of the Karuk Tribe. The resolution also authorized the tribe's intervention in Minor's dependency proceeding. On July 21, 2006, the children's division of the tribal court of the Karuk Tribe of California entered an "ORDER ACCEPTING JURISDICTION AND AWARDING TEMPO-RARY CUSTODY." In the order, the tribal court found that Michael T. was Minor's biological father and that Minor was eligible for membership in the tribe. The tribal court also "accepted" the transfer of jurisdiction of the case from the Humboldt County Juvenile Court.[3] Its order further provided that

---

[2] Although the record does not contain Michael T.'s date of birth, all parties agree that he was a minor at the time of the permanency planning hearing.

[3] This acceptance of jurisdiction was premature. At the time the tribal court entered its order, no request for transfer of jurisdiction had yet been filed in the Humboldt County Juvenile Court. The tribal court therefore issued a second order on July 24, 2006, noting that it would take no action until the transfer request was heard in Humboldt County Juvenile Court.

"effective upon transfer from the California Superior Court, [Minor] is adjudged a temporary Ward of the Children's Division of the Karuk Tribal Court with temporary legal custody awarded to the Karuk Tribe of California Department of Child and Family Services."

Shortly thereafter, on July 28, 2006, the Karuk Tribe filed in Humboldt County Juvenile Court a notice of intervention and a request to transfer jurisdiction to the Karuk Tribal Court. On August 1, 2006, the tribe filed in the juvenile court a petition to invalidate the court's earlier termination of parental rights. The following day, the Hoopa Valley Tribe filed a notice of withdrawal of intervention. In its notice, the Hoopa Valley Tribe stated that Minor was not eligible for membership in the Hoopa Valley Tribe.

On August 7, 2006, Minor's case was calendared for a hearing on the intervention by the Karuk Tribe and the tribe's motion to transfer jurisdiction.[4] The juvenile court inquired whether anyone disputed that Minor was the biological child of a Karuk Tribe member. Neither counsel for the Department nor counsel for Minor offered to refute the blood test results showing that Michael T. was Minor's father. The juvenile court then found that "it does appear from the state of the record, and no one has shown otherwise or objected otherwise, that—that the child's tribe is the Karuk Tribe since he is the biological child of a member of the Karuk Tribe, Mr. T[.], by the record before it, the evidence before the Court, and is either a member of or eligible for membership in the Karuk Tribe." The juvenile court therefore confirmed the Karuk Tribe's right to intervene in the case.

At the continuation of the hearing on August 8, the court appointed counsel for Michael T. That same day, Michael T. filed a parental notification of Indian status, stating that he was a member of the Karuk Tribe and that Minor was a member or eligible for membership in the tribe. Michael T. also filed a statement regarding paternity in which he stated that he had established paternity through a blood test and through the July 21, 2006 judgment of paternity by the children's division of the Karuk Tribal Court. On August 16, Michael T. joined the Karuk Tribe's motion to transfer the case to tribal court.

After various continuances of the hearing, the juvenile court heard argument on a number of motions on September 13, 2006. The juvenile court granted the Karuk Tribe's motion to transfer and entered a written order

---

[4] The juvenile court also noted that Marilyn R. and Jason M., who had earlier been granted de facto parent status, had filed a request for prospective adoptive parent designation.

stating that "[o]n 9-13-06, this matter be transferred to the Children's Division of the Tribal Court of the Karuk Tribe of California pursuant to the Indian Child Welfare Act, [title] 25 U.S.C. § 1911(b)." Although counsel for Minor was present at the hearing, she did not request a stay of the transfer order. Pursuant to title 25 United States Code section 1914,[5] the juvenile court also set aside its earlier order terminating parental rights. The court further denied without prejudice the de facto parents' request for prospective adoptive parent designation, denied a motion by Minor's counsel for paternity testing, and granted Michael T.'s motion for visitation. The court directed the clerk's office to complete the transfer to the Karuk Tribal Court and continued the matter to September 25, 2006, to confirm that the case had been transferred.

At the hearing on September 25, 2006, the juvenile court confirmed that the file had been delivered to the Karuk Tribal Court on September 18, 2006, and had been accepted by the tribal court on the following day. At the same hearing, the juvenile court also relieved all counsel in this matter. On October 25, 2006, the juvenile court signed a Judicial Council Forms, form JV-550 (Juvenile Court Transfer Orders). (See Cal. Rules of Court, rule 5.605(f).) That order states, "The child is an Indian child under the Indian Child Welfare Act and the child's case is transferred to the Karuk Tribe [T]ribal Court, the child's tribe, under 25 U.S.C. section 1911." The order was filed in Humboldt County Superior Court on October 27, 2006.

On October 2, 2006, counsel for Minor filed a notice of appeal from the juvenile court's September 13, 2006 order setting aside the termination of parental rights. Although the notice of appeal identified only the order setting aside the termination of parental rights, Minor's brief on appeal challenges a number of other rulings by the juvenile court, including the order transferring the case to the Karuk Tribal Court.

This court appointed appellate counsel for Minor on December 1, 2006. Six months later, on May 15, 2007, Minor's counsel filed a petition for writ of supersedeas/prohibition/habeas corpus and a request for a temporary stay

---

[5] That provisions states: "Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections [1911], [1912], and [1913] of this Act." (25 U.S.C. § 1914.)

of a Karuk Tribal Court hearing set for May 18, 2007. On May 18, 2007, we denied the petition for writ of supersedeas/prohibition and the request for temporary stay. We severed Minor's habeas corpus claims from the remainder of the petition and further ordered the appeal expedited.[6] On June 7, 2007, Minor's counsel filed a second petition for writ of supersedeas and request for stay. We denied this petition by order dated June 12, 2007.

DISCUSSION

Minor raises a host of arguments in this court, but before we may address them, we must determine whether we may entertain this appeal at all. Both the Karuk Tribe and Michael T. argue that the juvenile court's transfer of Minor's case to the Karuk Tribal Court has rendered the appeal moot. They note that Minor asks this court to reverse the transfer order and to direct the juvenile court to reassume jurisdiction over his dependency case. In simplest terms, the Karuk Tribe and Michael T. contend that because the juvenile court has transferred the case, the tribal court has accepted jurisdiction, and Minor is now a ward of the tribal court, the juvenile court has lost all jurisdiction over Minor's dependency.[7] They argue that jurisdiction over Minor now resides in the Karuk Tribal Court, and this court has no power to compel that court to return Minor's case to the California courts.

For the reasons that follow, we conclude that the transfer of Minor's case to the courts of a wholly separate sovereign has deprived the California courts of jurisdiction over this case. Simply put, the juvenile court may not act in a case over which it no longer has jurisdiction, and, as we shall explain, we have no power to command the Karuk Tribal Court to return the case to us. Because this loss of jurisdiction makes it impossible for us to render any effective relief to Minor, we must dismiss this appeal. Before turning to the jurisdictional issue that is at the heart of this case, we will first review the ICWA's jurisdictional provisions and the principles of tribal sovereignty that guide our decision.

---

[6] In the separate petition for writ of habeas corpus, Minor has raised a number of claims regarding his alleged right to a stable placement and challenging the competency of his trial counsel. We have dismissed that petition by separate order filed this date.

[7] In view of the importance of the jurisdictional question, on July 11, 2007, we requested that the parties submit supplemental briefs on this issue. Although the parties have framed the issue as one of mootness and our supplemental briefing request used that term, we believe that the problem is more correctly described as one of jurisdiction. Counsel for Minor, the Karuk Tribe, and Michael T. have filed supplemental briefs. In addition, on July 23, 2007, we appointed counsel for de facto parents Marilyn R. and Jason M., and their counsel has submitted a brief on their behalf which also addresses the jurisdictional issue.

## I. *Transfers to Tribal Courts Under the ICWA*

 Section 101 of the ICWA, codified at title 25 United States Code section 1911, governs Indian tribal jurisdiction over custody proceedings involving Indian children. In custody proceedings involving Indian children who reside or are domiciled within the reservation of the tribe, the ICWA generally grants the tribe exclusive jurisdiction. (25 U.S.C. § 1911(a).) In contrast, the ICWA "creates concurrent but presumptively tribal jurisdiction in the case of children not domiciled on the reservation: on petition of either parent or the tribe, state-court proceedings for foster care placement or termination of parental rights *are to be transferred to the tribal court,* except in cases of 'good cause,' objection by either parent, or declination of jurisdiction by the tribal court." (*Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 36 [104 L.Ed.2d 29, 109 S.Ct. 1597], italics added.) Put another way, the ICWA establishes a preference for tribal court jurisdiction in cases of foster care placement or termination of parental rights involving Indian children, even where those children are not domiciled or residing within the tribe's reservation. (See U.S. Dept. of Interior, Bur. of Indian Affairs, Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67583, 67592, col. 1 (Nov. 26, 1979) (hereafter BIA Guidelines) ["Congress has established a policy of preferring tribal control over custody decisions affecting tribal members"].) In such cases, upon petition of either of the Indian child's parents, the child's custodian, or the child's tribe, the state court, "in the absence of good cause to the contrary, *shall transfer such proceeding to the jurisdiction of the tribe,* absent objection by either parent." (25 U.S.C. § 1911(b), italics added; see also BIA Guidelines, *supra,* at p. 67590, col. 3 ["Upon receipt of a petition to transfer by . . . the Indian child's tribe, the court must transfer" unless parent objects, tribal court declines jurisdiction, or good cause exists to deny transfer]; Cal. Rules of Court, rule 5.664(c)(2) [on petition of tribe, parent, or Indian custodian to transfer the case, "the juvenile court *must* transfer the proceedings to tribal jurisdiction unless there is good cause not to do so" (italics added)].)

While the ICWA clearly establishes a preference for tribal court jurisdiction in custody proceedings involving Indian children and provides certain rules for the transfer of cases to tribal courts, it does not prescribe any particular mechanism or procedure for accomplishing such transfers. (Risling, Cal. Judges' Benchguide: The Indian Child Welfare Act (Cal. Indian Legal Services 2000) p. 69 ["there is no standard procedure for accomplishing transfer" (boldface & italics omitted)].) The BIA Guidelines say only that upon receiving a transfer petition, "the state court shall notify the tribal court in writing of the proposed transfer" and, if the case is transferred, "the state

court shall provide the tribal court with all available information on the case." (BIA Guidelines, *supra,* 44 Fed.Reg. at p. 67592, col. 1.) They further state that transfers should be arranged "as simply as possible consistent with due process" and suggest that "[t]ransfer procedures are a good subject for tribal-state agreements under 25 U.S.C. § 1919."[8] (BIA Guidelines, *supra,* at p. 67592, col. 2.)

Thus, neither the ICWA itself nor the guidelines interpreting it are particularly helpful in determining whether the juvenile court's transfer of this proceeding to the Karuk Tribal Court has completely and irrevocably divested the state court of jurisdiction over Minor's case. Despite this absence of direct, controlling authority, we may answer this question by reference to well-established legal principles concerning the status of Indian tribes and to case law concerning transfers of jurisdiction.

II. *Indian Tribal Sovereignty*

■ California case law recognizes the unique status of Indian tribes as sovereign entities. (See, e.g., *Agua Caliente Band of Cahuilla Indians v. Superior Court* (2006) 40 Cal.4th 239, 247 [52 Cal.Rptr.3d 659, 148 P.3d 1126] [Indian tribes have been characterized as " 'domestic dependent nations,' or separate sovereigns"]; *Campo Band of Mission Indians v. Superior Court* (2006) 137 Cal.App.4th 175, 181 [39 Cal.Rptr.3d 875] ["an Indian tribe is a sovereign authority"]; *Redding Rancheria v. Superior Court* (2001) 88 Cal.App.4th 384, 387 [105 Cal.Rptr.2d 773] ["An aboriginal American tribe is a sovereign nation"]; see also Cohen, Handbook of Federal Indian Law (2005 ed.) § 4.01[1][a] p. 207 ["the constitutional recognition of tribes as sovereigns in a government-to-government relationship with the United States has remained a constant in federal Indian law"].) "Indian tribes are not states. They have a status higher than that of states. They are subordinate and dependent nations possessed of all powers [except] to the extent that they have expressly been required to surrender them by the superior sovereign, the United States. [Citation.]" (*N.L.R.B. v. Pueblo of San Juan* (10th Cir. 2002) 276 F.3d 1186, 1192, fn. 6; accord, *Gavle v. Little Six, Inc.* (Minn. 1996)

---

[8] Under title 25 United States Code section 1919(a), states and Indian tribes are authorized to enter into agreements "respecting care and custody of Indian children and jurisdiction over child custody proceedings, including agreements which may provide for orderly transfer of jurisdiction on a case-by-case basis and agreements which provide for concurrent jurisdiction between States and Indian tribes." Minor has requested that we take judicial notice of the "Title IV-E Intergovernmental Agreement Between the California Department of Social Services and the Karuk Tribe of California." We grant the request. (Evid. Code, § 452, subd. (c).) Nevertheless, our review of this agreement has not disclosed any provisions governing the procedure for transferring custody cases from state to tribal courts.

555 N.W.2d 284, 289 (*Gavle*) ["Indian tribes . . . possess a kind of sovereignty superior to that of states but inferior to that of the federal government"].) An attribute of this sovereignty is the power of tribes to establish their own courts, and thus Congress has declared that "Indian tribes possess the inherent authority to establish their own form of government, including tribal justice systems . . . ." (25 U.S.C. § 3601(4).)

■ "[A]lthough the tribal court is located within the geographic boundaries of the state, it is not a [California] court; it is the court of an independent sovereign." (*Teague v. Bad River Band of Chippewa Indians* (2000) 2000 WI 79 [236 Wis.2d 384, 612 N.W.2d 709, 717].) The jurisdictional issue in this case arises in large part from this fact. We are not dealing here with a jurisdictional conflict between two California courts. Instead, this case presents a question concerning the allocation of jurisdiction between the courts of two separate and distinct sovereigns—the State of California and the Karuk Tribe. The principle of Indian sovereignty is therefore central to our analysis, because the United States Supreme Court has noted that the sovereignty of the tribe "provides a backdrop against which the applicable . . . federal statutes must be read." (*McClanahan v. Arizona State Tax Comm'n* (1973) 411 U.S. 164, 172 [36 L.Ed.2d 129, 93 S.Ct. 1257].) Bearing the principle of tribal sovereignty in mind, we turn to an analysis of cases that address appellate review of the ICWA transfer orders.

III. *The California Courts Have Lost Jurisdiction over Minor's Case*

In their supplemental briefs, the parties have directed our attention to a number of cases in which appellate courts have reviewed transfer orders under the ICWA. We discuss these cases first to determine whether they can support an exercise of our appellate jurisdiction in this case. We find these cases inconclusive, and we therefore turn next to cases addressing the effect of transfer orders on trial court jurisdiction. As we explain below, our review of the relevant case law indicates that the juvenile court's transfer of jurisdiction to the Karuk Tribal Court has deprived us of jurisdiction to consider this appeal.

A. *Cases Involving Appellate Review of Transfer Orders under the ICWA*

Our research has disclosed two reported cases in which California courts have clearly entertained appeals from transfer orders under the ICWA. (*In re M.A.* (2006) 137 Cal.App.4th 567, 571, 578 [40 Cal.Rptr.3d 439] [affirming

transfer order to Karuk Tribal Court]; *In re Larissa G.* (1996) 43 Cal.App.4th 505, 508, 516 [51 Cal.Rptr.2d 16] (*Larissa G.*) [reversing transfer order].) In neither case, however, did the courts address whether the transfer of the case to tribal court divested the state courts of jurisdiction.[9] As these opinions did not consider the jurisdictional issue, they do not provide any support for an exercise of jurisdiction in this case. (See *American Portland Cement Alliance v. E.P.A.* (D.C. Cir. 1996) 101 F.3d 772, 775–776 [concluding that court lacked subject matter jurisdiction to review certain Environmental Protection Agency determinations despite two prior cases in which court had exercised jurisdiction to review such determinations; issue of jurisdiction had not been presented in earlier cases].)

Cases from other states are similarly unhelpful. In some cases, although litigants have contended that the transfer of a case from state to tribal court deprives the state courts of jurisdiction, the court has not passed upon the issue. (*In Interest of Armell* (1990) 194 Ill.App.3d 31 [141 Ill.Dec. 14, 550 N.E.2d 1060, 1063, 1069] [affirming transfer order without addressing tribe's argument that state court lost jurisdiction after transfer].) In other cases, the transfer order was stayed pending appeal so that the state courts did not lose jurisdiction over the case before the appeal could be resolved. (*Ex parte C.L.J.* (Ala.Civ.App. 2006) 946 So.2d 880, 884 [guardian ad litem's motion for emergency stay granted]; *People in Interest of J.L.P.* (Colo.Ct.App. 1994) 870 P.2d 1252, 1256 [appellate court granted stay of execution of transfer of jurisdiction pending appeal]; *In re Interest of C.W. et al.* (1992) 239 Neb. 817 [479 N.W.2d 105, 110] [juvenile court stayed transfer of children pending appeal].) In one case, a Montana trial court concluded that it had lost jurisdiction over a juvenile proceeding once it entered an ICWA transfer order, but the Montana Supreme Court appears to have disagreed because the tribe did not take custody of the children, who remained in a county foster home pending the outcome of the appeal. (*Matter of G.L.O.C.* (1983) 205 Mont. 352 [668 P.2d 235, 236, 237].) The Montana Supreme Court then

---

[9] It is possible that in those cases the courts granted a stay of the transfer order pending appeal to preserve appellate jurisdiction. (Cf. *In re Wanomi P.* (1989) 216 Cal.App.3d 156, 163 [264 Cal.Rptr. 623] (*Wanomi P.*) [apparently reviewing the ICWA transfer order to Canadian Indian tribe, but noting that stay of order had been obtained before minor was sent to Canada]; *In re Manuel P.* (1989) 215 Cal.App.3d 48, 72–73 [263 Cal.Rptr. 447] (*Manuel P.*) [juvenile criminal defendant could have preserved right to appeal by requesting that California juvenile court stay order that he return to Mexico].) Neither *In re M.A.* nor *Larissa G.* mentions such a stay, however. In its supplemental brief on the issue of jurisdiction, the Karuk Tribe claims that a stay was granted in the *Larissa G.* case. In support of this claim, the Karuk Tribe has attached to its supplemental brief materials that appear to be taken from the juvenile court and appellate court records in that case. We will not consider the materials because they are not authenticated, and the Karuk Tribe has not requested that we take judicial notice of them. (Cal. Rules of Court, rule 8.252(a)(1).)

vacated the transfer order. (*Id.*, 668 P.2d at p. 238.) Finally, in *People in Interests of M.C.* (S.D. 1993) 504 N.W.2d 598, the South Dakota Supreme Court first granted a temporary stay of the transfer order pending consideration by the full court, which then denied the motion for stay. (*Id.* at pp. 599–600.) Despite the lack of a stay, the court went on to reverse the transfer order, but it noted that "[a]t the hearing on the request for a stay, the Tribe, through its counsel, assured the trial court that if the transfer was reversed, the Tribe would transfer the case back to state court." (*Id.* at p. 602.) In essence, it appears that the tribe in that case voluntarily agreed to abide by the South Dakota Supreme Court's decision.

These cases do not assist us in determining whether we have the power to review the propriety of an ICWA transfer order *after* the juvenile court has ordered the case transferred to the tribal court, the tribal court has accepted jurisdiction, and the minor has been made a ward of the tribal court. The answer to the question lies instead in an analysis of the effect of the transfer on the juvenile court's jurisdiction.

### B. *Transfer of the Case Deprives the California Juvenile Court of Any Further Jurisdiction to Act*

We have found only one published case that directly addresses how an ICWA transfer order affects the jurisdiction of the transferor court. In *Comanche Indian Tribe of Oklahoma v. Hovis* (W.D.Okla. 1994) 847 F.Supp. 871 (*Hovis*), reversed on other grounds (10th Cir. 1995) 53 F.3d 298,[10] an Oklahoma state court had granted a tribal request to transfer a juvenile case to tribal court pursuant to title 25 United States Code section 1911(b). (*Hovis, supra*, at p. 874.) In June 1987, the tribal court issued an order accepting jurisdiction and made the two children at issue wards of the tribal court. (*Ibid.*) Over the next three and a half years, the tribal court conducted a number of custody and related proceedings concerning the children. (*Ibid.*) In February 1991, the children's non-Indian mother asked the Oklahoma state court to vacate the transfer order. (*Ibid.*) The state court did so, concluding

---

[10] The Tenth Circuit reversed the district court's judgment in *Hovis* because the appellate court concluded that collateral estoppel precluded the tribe from relitigating its jurisdictional claims in federal court after those claims had been considered and rejected by the Oklahoma state courts. (*Comanche Indian Tribe of Oklahoma v. Hovis* (10th Cir. 1995) 53 F.3d 298, 303–304.) Although the district court's judgment in *Hovis* was reversed, we may still rely on its opinion as persuasive authority. (Cf. *Roe v. Anderson* (9th Cir. 1998) 134 F.3d 1400, 1404 [Ninth Circuit opinion that had been vacated by United States Supreme Court remained "viable as persuasive authority"]; *In re Taffi* (9th Cir. 1995) 68 F.3d 306, 310 [relying on persuasive authority of Ninth Circuit opinion vacated by United States Supreme Court]; *Orhorhaghe v. I.N.S.* (9th Cir. 1994) 38 F.3d 488, 493, fn. 4 [vacated opinion retains value as persuasive authority].)

that the transfer order was void because it had been granted over the mother's objection. (*Ibid.*) After the conclusion of the proceedings in Oklahoma state court, the tribe intervened in the proceedings in the tribal juvenile court and received an order holding that the tribal court had exclusive jurisdiction over the matter. (*Id.* at pp. 874–875.) The tribe then filed an action in federal court seeking a declaration that the tribal court possessed exclusive jurisdiction. (*Id.* at p. 875.)

At the conclusion of its opinion, the *Hovis* court addressed the tribe's contention that the state court lost any jurisdiction that it had over the case when it transferred the matter to the tribal court in 1987. (*Hovis, supra,* 847 F.Supp. at pp. 885–887.) The defendants, including the mother, argued that the original transfer order was void because it was made over the mother's objection, and that once the state court found its initial transfer improper, it could reassert jurisdiction to correct its error. (*Id.* at p. 885.) Relying on Oklahoma state law governing transfers of venue, the district court held that the state court lost jurisdiction over the case after it transferred the matter and transmitted the case file to the tribal court. (*Id.* at pp. 886–887.) Because the record already had been transferred and the tribal court had asserted its exclusive jurisdiction, "the State Court, at [the time the motion to vacate was filed] in 1991, had indeed lost jurisdiction to vacate the prior order." (*Id.* at p. 887.) As a result, the district court concluded that the state court had no jurisdiction to reconsider and vacate the transfer order, and its vacation of that order was void for lack of jurisdiction. (*Ibid.*)

Because *Hovis* appears to be the only case directly on point, we look to other areas of the law for additional guidance. A helpful analogy to the situation before us is the removal of actions from state court to federal court under title 28 United States Code section 1446. Just as states and Indian tribes are separate sovereigns, states are separate sovereigns with respect to the federal government. (E.g., *Heath v. Alabama* (1985) 474 U.S. 82, 89 [88 L.Ed.2d 387, 106 S.Ct. 433].) Removal of an action may therefore be viewed as a transfer of the proceeding from the courts of one sovereign (a state) to the courts of another (the United States). As a consequence, when an action is removed from state court to federal court, the state court loses jurisdiction to proceed further with the matter. As the Ninth Circuit has explained, "[t]he removal of an action to federal court necessarily divests state and local courts of their jurisdiction over a particular dispute." (*Cal. ex rel. Sacramento Metro. Air Quality v. U.S.* (9th Cir. 2000) 215 F.3d 1005, 1011.) Thus, "a removal petition deprives the state court of jurisdiction as soon as it is filed and served upon the state court . . . ." (*People v. Bhakta* (2006) 135 Cal.App.4th 631, 636 [37 Cal.Rptr.3d 652]; accord, *Resolution Trust Corp. v. Bayside Developers* (9th Cir. 1994) 43 F.3d 1230, 1238, italics omitted ["the state court loses jurisdiction upon the filing of the petition for

removal"].) In sum, once the action is removed to the courts of a different sovereign, the state court loses its power to adjudicate the dispute.

 Applying the reasoning of these cases to the appeal before us supports the conclusion that the California courts are deprived of jurisdiction. The Humboldt County Juvenile Court lost jurisdiction over Minor's dependency proceeding once the case was transferred to the Karuk Tribal Court and the latter court accepted jurisdiction. (*Hovis, supra,* 847 F.Supp. at p. 887.) Even if we were to find that the juvenile court erred on the merits (a question we do not reach), we would be unable to grant effective relief to Minor. We are reviewing only the orders of the Humboldt County Juvenile Court, and that court no longer has any jurisdiction over this case. (See Bench Handbook: The Indian Child Welfare Act (CJER 2006) Determining Jurisdiction, § 1.11, p. 9 ["A transfer is a request for the entire case to go to the tribal court for all purposes and *terminates state jurisdiction.*" (Italics added.)].) Although we are empowered to issue orders to California juvenile courts, we have no similar power over the Karuk Tribal Court. (See *Matsch v. Prairie Island Indian Community* (Minn.Ct.App. 1997) 567 N.W.2d 276, 279 ["We know of no legal authority that extends to state court[] appellate rights and powers over an Indian tribal court."].) Unlike the federal courts, we do not have jurisdiction to engage in even limited review of a tribal court's decisions.[11] (*Lemke ex rel. Teta v. Brooks* (Minn.Ct.App. 2000) 614 N.W.2d 242, 245.) Because the Karuk Tribe is a separate sovereign, we could no more compel its courts to comply with our orders than we could compel the courts of a foreign state or nation to do so. (See *Wilson v. Marchington* (9th Cir. 1997) 127 F.3d 805, 807 ["Because states and Indian tribes coexist as sovereign governments, they have no direct power to enforce their judgments in each other's jurisdictions."]; *Gavle, supra,* 555 N.W.2d at p. 289 ["absent a grant of federal authority, state courts have no jurisdiction over Indians, Indian tribes or other Indian entities"]; *Anderson v. Engelke* (1998) 1998 MT 24 [287 Mont. 283, 954 P.2d 1106, 1110–1111] [state court has no power to enforce a tribal court judgment within the boundaries of an Indian reservation via state law and execution proceedings]; cf. *In re Baby Girl A.* (1991) 230 Cal.App.3d 1611, 1624 [282 Cal.Rptr. 105] (dis. opn. of Crosby, J.) ["the Orange County Superior Court certainly lacks jurisdiction to compel a court of a sovereign foreign nation to follow a United States statute . . ."].)

---

[11] Cases such as *Brown on Behalf of Brown v. Rice* (D.Kan. 1991) 760 F.Supp. 1459 (*Rice*), cited by counsel for the de facto parents, are not to the contrary. The federal district court in *Brown* held that it had subject matter jurisdiction to adjudicate a challenge to a tribal court's custody decision, but its jurisdiction arose because "challenges to the exercise of jurisdiction by a tribal court present a question of *federal common law* which can be heard *in a federal court* under the general federal question statute, 28 U.S.C. § 1331." (*Rice, supra,* at p. 1462, italics added.) Nothing in the opinion indicates that state courts possess similar power.

As the foregoing discussion makes clear, we cannot adopt Minor's suggestion that we simply reverse the transfer order and direct the juvenile court to "reassume jurisdiction" over this matter. The case has been transferred to the Karuk Tribal Court, which has exercised its jurisdiction and declared Minor a ward of that court. Even if we were to reverse, neither the juvenile court nor this court has the power to command the courts of a wholly separate sovereign to return the case to us.

C. *The ICWA's Grant of Concurrent Jurisdiction to State Courts Does Not Permit State Courts to Retain Jurisdiction After Transfer Is Completed*

Minor argues that the juvenile court's transfer order "bestowed joint or 'concurrent' jurisdiction on the tribal court—the order did not terminate the state judiciary's authority to make orders in the exercise of its concurrent jurisdiction over a California dependent minor."[12] Minor appears to interpret the ICWA's grant of concurrent jurisdiction to state and tribal courts as permitting a state court to continue to issue orders affecting the dependent juvenile even after the case has been transferred to the tribal court. Minor's argument betrays a basic misunderstanding of the meaning of the term "concurrent jurisdiction."

When we speak of "concurrent jurisdiction," we refer to a situation in which two (or perhaps more) different courts are authorized to exercise jurisdiction over the same subject matter, such that a litigant may choose to proceed in either forum.[13] As the Minnesota Supreme Court explained in a case involving an Indian tribe, "[c]oncurrent jurisdiction describes a situation where two or more tribunals are authorized to hear and dispose of a matter

---

[12] It should be obvious that Minor is incorrect in contending that the juvenile court's transfer order "bestowed" jurisdiction on the Karuk Tribal Court. The tribal court's jurisdiction is a product of the Karuk Tribe's inherent sovereignty and Congress's allocation of jurisdiction under the ICWA. (See 25 U.S.C. § 1911 [Indian tribe jurisdiction over Indian child custody proceedings]; *Montana v. United States* (1981) 450 U.S. 544, 564 [67 L.Ed.2d 493, 101 S.Ct. 1245] [tribes retain "inherent power to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members"]; *United States v. Wheeler* (1978) 435 U.S. 313, 328 [55 L.Ed.2d 303, 98 S.Ct. 1079] [tribe has inherent sovereign power to punish offenses against tribal law by tribe members]; see also Holt & Forrester, Digest of American Indian Law (1990) Jurisdiction, ch. III, p. 50 ["Tribal powers are inherent, not derived from the federal government. As sovereigns, tribes exercise jurisdiction over their own affairs unless some federal exercise of power has altered tribal sovereignty."].)

[13] Although courts refer to the jurisdiction granted by the ICWA under title 25 United States Code section 1911(b) as "concurrent," in this context the term is perhaps somewhat imprecise. The Ninth Circuit has described this jurisdiction as "referral jurisdiction" and noted that "referral jurisdiction is broader in scope than concurrent jurisdiction, in that referral jurisdiction is concurrent *but presumptively tribal* jurisdiction." (*Native Village of Venetie I.R.A. Council v. Alaska* (9th Cir. 1991) 944 F.2d 548, 561, original italics.)

and the choice of which tribunal is up to the person bringing the matter to court." (*Gavle, supra*, 555 N.W.2d at p. 290.) ■ Contrary to Minor's apparent belief, that two courts have concurrent jurisdiction does *not* mean that both courts may simultaneously entertain actions involving the very same subject matter and parties. Rather, a grant of concurrent jurisdiction means that " 'litigants may, *in the first instance,* resort to either court indifferently.' " (*Mallory v. Paradise* (Iowa 1969) 173 N.W.2d 264, 267, italics added.) The exercise of jurisdiction by one court ordinarily will preclude the exercise of jurisdiction by other courts having concurrent jurisdiction. (*Greene v. Superior Court* (1951) 37 Cal.2d 307, 310 [231 P.2d 821] ["when two or more courts in this state have concurrent jurisdiction, the court first assuming jurisdiction retains it to the exclusion of all other courts in which the action might have been initiated"]; *In re Moreau* (Mo.Ct.App. 2005) 161 S.W.3d 402, 407.) "This concurrent jurisdiction doctrine has been applied in a number of cases to preclude two courts from exercising jurisdiction at the same time over a case involving the custody of a child." (*In re Moreau*, at p. 407.)

■ Thus, although the ICWA grants state and tribal courts the power to adjudicate proceedings for foster care placement or termination of parental rights to Indian children not domiciled or residing within the reservation of the Indian child's tribe, this does not mean that *after* a state court transfers a case to tribal court under title 25 United States Code section 1911(b), the state court retains the power to make orders affecting the Indian child. Were we to accept Minor's position, dependent Indian children could be subject to the orders of two wholly separate judicial systems, with no clear means of resolving potential conflicts between those orders. Even if it were within our power to do so, we see no reason to create such a jurisdictional conflict.

Minor's argument also cannot be squared with the manner in which Congress has chosen to allocate jurisdiction between the state and tribal courts under the ICWA. Although state courts do enjoy concurrent jurisdiction to adjudicate custody matters involving Indian children in certain circumstances (25 U.S.C. § 1911(b)), Minor can point to nothing in the statute that would authorize a California court to continue to supervise a dependent minor's case once that case has been transferred to the jurisdiction of the tribal court. Such an argument seems particularly ill founded in light of Congress's explicit decision to *require* that cases such as this be transferred to tribal jurisdiction save in certain enumerated circumstances. (See 25 U.S.C. § 1911(b).)

IV. *Preserving the Right to Appeal in Cases Subject to Transfer Orders*

We recognize that our disposition of this case will preclude Minor from having his claims on the merits heard by this court. Although counsel for

Minor decries this result as unjust, it is in part a consequence of the tribe's separate sovereignty. (See *Lamere v. Superior Court* (2005) 131 Cal.App.4th 1059, 1063, fn. 2 [31 Cal.Rptr.3d 880] [lack of formal judicial remedy for alleged injustice is "sometimes an inevitable consequence . . . of the tribe's sovereign immunity"].) For the benefit of future litigants in cases under the ICWA, we will take this opportunity to comment briefly on how this problem might be avoided.

The loss of jurisdiction that has led us to conclude that this appeal must be dismissed might have been averted had Minor's counsel sought an *immediate* stay of the transfer order pending Minor's exhaustion of his appellate remedies. (See *Wanomi P., supra*, 216 Cal.App.3d at p. 163; *Manuel P., supra*, 215 Cal.App.3d at pp. 72–73.) The juvenile court has the discretion to stay the provisions of a judgment or order awarding, changing, or affecting custody of a minor child "pending review on appeal or for any other period or periods that it may deem appropriate" (Code Civ. Proc., § 917.7), and the party seeking review of the transfer order should first request a stay in the lower court. (See *Nuckolls v. Bank of California, Nat. Assn.* (1936) 7 Cal.2d 574, 577 [61 P.2d 927] ["Inasmuch as the [L]egislature has provided a method by which the trial court, in a proper case, may grant the stay, the appellate courts, assuming that they have the power, should not, except in some unusual emergency, exercise their power until the petitioner has first presented the matter to the trial court."].) If the juvenile court should deny the stay request, the aggrieved party may then petition this court for a writ of supersedeas pending appeal. (Cal. Rules of Court, rule 8.112; see *People ex rel. S. F. Bay etc. Com. v. Town of Emeryville* (1968) 69 Cal.2d 533, 537 [72 Cal.Rptr. 790, 446 P.2d 790] [where "difficult questions of law are involved and the fruits of a reversal would be irrevocably lost unless the status quo is maintained, justice requires that an appellate court issue a stay order to preserve its own jurisdiction"].) Unfortunately, no stay was sought in this case until well after the transfer to the Karuk Tribal Court was complete.

An appeal need not unreasonably delay an appropriate transfer of the matter to the tribal court. Appeals from judgments in proceedings under Welfare and Institutions Code section 300 "have precedence over all other cases in the court to which the appeal is taken." (Welf. & Inst. Code, § 395, subd. (a)(1).) In addition, to ensure that the matter is heard and decided promptly by the Court of Appeal, the parties may request calendar preference in the appellate court. (Cal. Rules of Court, rule 8.240.) An order granting calendar preference "may include expedited briefing and preference in setting the date of oral argument." (*Ibid.*) These procedures should ensure that appellate review does not create undue delay.

### DISPOSITION

The appeal is hereby dismissed for lack of jurisdiction.

Jones, P. J., and Gemello, J., concurred.

Petitions for a rehearing were denied September 20, 2007, and the petitions of appellant M.M. and respondents Marilyn R. and Jason M. for review by the Supreme Court were denied November 28, 2007, S156963.